603 So.2d 739 (1992)
STATE of Louisiana
v.
Daniel LOBATO.
No. 91-K-2738.
Supreme Court of Louisiana.
July 1, 1992.
*742 Lavalle B. Salomon, Davenport, Files & Kelly, Monroe, for applicant.
Richard Phillip Ieyoub, Atty. Gen., Karen L. Godwin, Asst. Atty. Gen., Hon. Jerry L. Jones, Dist. Atty., Marcus Robley Clark, Asst. Dist. Atty., for respondent.
HALL, Justice.
Defendant, Daniel Lobato, was convicted of conspiracy to possess marijuana with intent to distribute, LSA-R.S. 14:26 and 40:966, and was sentenced to four and one-half years at hard labor with a fine of $1,250 plus court costs, in default of which defendant is to serve six additional months. On appeal, the conviction and sentence were affirmed. 588 So.2d 1378 (La.App. 2d Cir.1991). The defendant's writ application was granted by this court. 594 So.2d 1306 (La.1992).
The primary issues raised by defendant's assignments of error concern: (1) the admissibility of recorded telephone conversations between defendant and his two co-conspirators made after defendant's arrest and in conjunction with his cooperation with the Louisiana State Police; (2) the exclusion of evidence offered by defendant intended to show his lack of knowledge and participation in the criminal conspiracy; (3) whether defendant was denied effective assistance of counsel by reason of his counsel's conflict of interest in representing an alleged co-conspirator; and (4) excessiveness of sentence.
Because we conclude the trial court did not err in determining defendant failed to carry his burden of proving withdrawal from the conspiracy prior to the time the conversations were recorded, we hold the recorded statements of defendant's co-conspirators admissible under LSA-C.E. Art. 801(D)(3)(b). Defendant's statements in those recorded conversations are admissible as nonhearsay. Any error in excluding evidence offered by defendant did not materially affect defendant's opportunity to present a defense and was harmless. The ineffective assistance of counsel claim based on counsel's conflict of interest presents a serious issue which requires an evidentiary hearing. The claim of excessive sentence is without merit. Accordingly, the defendant's conviction and sentence are conditionally affirmed. The case is remanded to the district court for an evidentiary hearing on defendant's claim of ineffective assistance of counsel. If the district court determines that the ineffective assistance of counsel claim has merit, the court should set aside the conviction and order a new trial. If the district court determines that the ineffective assistance of counsel claim is without merit, defendant's right to appeal from that ruling is reserved to him.

I.
On Sunday, December 14, 1986, defendant was stopped by Louisiana State Police Trooper Mike Epps on an I-20 exit near Monroe, Louisiana, for a routine traffic violation. After Epps discovered defendant was a Texas resident and the vehicle he was driving was registered in Texas in the name of a third party, defendant told Epps, in conversation, that the vehicle belonged to his girlfriend and that he had traveled from Austin, Texas to Biloxi, Mississippi for the weekend. Defendant stated he did not bring any luggage with him although Epps had noticed a suitcase in the backseat of the vehicle. Epps requested and received written consent from defendant to search the vehicle after Louisiana State Police Trooper Jackie Coleman arrived at the scene. Epps noticed an odor of marijuana during his search of defendant's vehicle. A stronger odor of marijuana was noticed in the empty suitcase where marijuana gleanings were discovered. Upon his arrest for simple possession of marijuana, defendant produced approximately $18,000 cash in small bundles from his person and explained that he had picked up the money for a roofing job and that it belonged to a third party.
At Louisiana State Police headquarters in Monroe, Sgt. James Cannon spoke with defendant to investigate the possibility that a marijuana smuggling operation had been uncovered. According to Cannon, defendant admitted transporting fifteen to sixteen *743 pounds of marijuana for Robert Phillips from Austin, Texas to Jackson, Mississippi, delivering the marijuana to Gary Veazey, and receiving $18,000 in cash from Veazey. Defendant agreed to cooperate with the State Police and, in a plan formulated by the State Police, called Robert Phillips, the alleged seller, in Austin, Texas and informed him that he had been robbed of the $18,000 at a truck stop enroute from Jackson to Austin by associates of Gary Veazey, the alleged purchaser. After several telephone conversations between defendant and Phillips and defendant and Veazey, Veazey met defendant in Monroe to deliver the $3,000 balance owed on this marijuana transaction and to check on the robbery. Veazey was arrested after the money was handed to defendant.
The telephone calls were monitored and recorded by the police. Defendant was wearing a recording device during his meeting with Veazey in Monroe and that conversation was also recorded.
On Monday, December 15, 1986, the day after his arrest and cooperation with the authorities, defendant made a recorded statement. In that statement, defendant indicated he had been contacted by Phillips by telephone on Friday, December 12, 1986, and asked if he would like to make $350-450 plus expenses over the weekend driving a car for him to Mississippi to collect on a roofing debt owed him from someone living in Mississippi. Defendant agreed, stating the deal seemed legitimate and that he was unaware of any illegal activity Phillips may have been previously engaged in. Although defendant believed he was to drive to Biloxi, Phillips instructed him to drive to Dallas, take I-20 to Mississippi and then make contact upon arrival in Jackson. When defendant contacted Phillips after arriving in Jackson, Phillips instructed him to register at a motel. Veazey called defendant at the motel to confirm his room number and later met defendant at the motel. Veazey asked defendant if he had anything with him and then borrowed the keys to defendant's vehicle. Upon Veazey's return to the motel several hours later, defendant became nervous when Veazey handed him a sack with $18,150 cash because he expected a check and then "knew something wasn't right," believing the cash to be drug money. Veazey stated he was "short" and defendant counted the money on Veazey's request. Defendant stated Phillips had told him not to worry "if Gary is short because I'm a little short too ... tell them I'm a little light." Defendant later left the motel to drive back to Austin. Defendant stated that after being stopped by the State Trooper, he consented to the search of his vehicle as he was confident that he didn't have any drugs and that there were no drugs in the vehicle. Defendant indicated he did not initially cooperate with the State Police but decided to do so because he didn't want to go to jail over $300 and then told the authorities everything he knew.
During a jury trial on January 8-11, 1990, Cannon testified defendant initially told him he had been sent to Jackson, Mississippi to collect a roofing debt. However, defendant subsequently admitted he had been hired by Robert Phillips to transport 15 to 16 pounds of marijuana from Austin to Jackson, with instructions to contact Phillips upon arrival at a motel in Jackson. After doing so, defendant was contacted by Veazey at the motel. Leaving defendant at the motel, Veazey took defendant's vehicle and returned several hours later with a sack containing $18,000 cash wrapped in small bundles. Veazey handed the money to defendant after indicating that he was approximately $3,000 "short" on the money he owed Phillips on this transaction.
Cannon testified defendant stated he knew he was transporting marijuana and, although he had never done anything like this before, did it because he needed the money. Defendant stated he was to be paid approximately $400 by Phillips for his participation in this transaction as courier. A gas receipt indicating defendant had traveled through Monroe the previous day and Phillips' business card was found on defendant's person. Defendant's statements to Cannon were not recorded.
Cannon and other officers with the Louisiana State Police testified as to defendant's cooperation in making the recorded *744 telephone calls and in meeting with Veazey. The recorded conversations were introduced and admitted into evidence at trial over defense counsel's objection.
Veazey testified that he contacted defendant at the motel after receiving a telephone call from Phillips. According to Veazey's testimony, defendant accompanied Veazey to defendant's vehicle, retrieved the suitcase out of the trunk, and placed it in Veazey's vehicle. Veazey returned to the motel several hours later with $18,000, which defendant counted upon receipt. Veazey left the motel. After later receiving a telephone call from Phillips indicating defendant had been robbed, Veazey drove to Monroe that evening to deliver the $3,000 balance to defendant and to investigate the robbery.
Defendant testified he did not tell Cannon that he had transported marijuana for Phillips from Austin to Jackson. Rather, defendant testified the only statement made to the State Police was that made on December 15, 1986, the day after his arrest and cooperation. During his testimony, defendant indicated his employer had told him Phillips needed someone to travel to Mississippi to collect an overdue roofing debt and that he agreed to do so because he needed the money. Defendant stated he did not search the vehicle which had been borrowed by Phillips from a third party before embarking on his trip and did not suspect anything illegal. Defendant also stated he was not suspicious about being instructed to give Veazey the keys to the vehicle because Veazey arrived at the motel in a company vehicle. Defendant testified he became nervous and suspected something illegal was transpiring when Veazey handed him the cash because he expected to receive a check. Defendant stated he never knew he was transporting drugs and told Trooper Epps he had traveled to Biloxi when stopped for the traffic violation because it was the first thing that came to mind.

II.
The court of appeal dealt with each of defendant's assignments of error in a carefully considered and well-reasoned opinion. Regarding defendant's contention that the trial court erred in admitting the recorded conversations into evidence, the court of appeal determined defendant's statements during the conversations to be admissible as nonhearsay. The false statements regarding the robbery were not offered as statements of truth and were presented to the jury as false statements intended to induce the co-conspirators to act. Furthermore, any true statements made by defendant were not determined to be hearsay as they constituted admissions on his part under LSA-C.E. Art. 801(D)(2)(a). The court of appeal concluded the statements made by Phillips and Veazey were admissible as statements made by co-conspirators in furtherance of the objective of the conspiracy under LSA-C.E. Art. 801(D)(3)(b). After noting that defendant conceded the state to have proved a prima facie case of conspiracy as required by LSA-C.E. 801(D)(3)(b), the court found defendant failed to carry his burden of proving withdrawal from the conspiracy so as to make those statements inadmissible as hearsay. Defendant recanted his confession after cooperating with the State Police and claimed he had never been part of the conspiracy at hand. Accordingly, the court of appeal concluded defendant had not made a clean breast to the authorities so as to have legally withdrawn from the conspiracy. The statements made by Phillips and Veazey were determined to be in furtherance of the conspiracy as they were designed to facilitate resolution of the problem affecting completion of the conspiracy's objective.
On appeal, defendant also contended the trial court erroneously sustained the state's hearsay objections to his testimony, thereby denying him the opportunity to present a defense, and erroneously ruled on objections by the state without requiring the state to indicate the bases therefor. However, the court of appeal found that defendant's attorney did not make timely objection to the court's ruling nor make known the substance of the evidence. The court of appeal concluded defendant was able to present his defense of no knowledge of or participation in the conspiracy through his *745 testimony and his attorney's cross-examination and argument and found defendant's arguments to be meritless.
Defendant also argued his attorney was rendered ineffective at trial because of his simultaneous representation of both him and co-conspirator Phillips. However, the court of appeal refused to presume that multiple representation automatically resulted in ineffective assistance of counsel. Because record evidence regarding multiple representation was insufficient for an intelligent review of the issue, the appellate court concluded defendant's remedy was that of post-conviction relief where the quality of his attorney's performance could be fully developed and explored.
In response to defendant's contentions that his sentence was excessive, the Second Circuit concluded the trial court adequately articulated its reasons for sentencing in compliance with the sentencing guidelines found in LSA-C.Cr.P. Art. 894.1. Additionally, the court did not find defendant's sentence to be unconstitutionally excessive. Even though the instant offense was defendant's first felony conviction and the maximum penalty at the time of the offense was five years at hard labor with a fine of $2,500, the appellate court determined the trial court had not abused its discretion considering the seriousness of the offense committed.

III.
As noted, the first issue before us concerns the admissibility of the recorded conversations between defendant and Phillips and defendant and Veazey.
Defendant contends the lower courts erred in admitting the recorded conversations into evidence under LSA-C.E. Art. 801(D)(3)(b) since the conversations transpired after his participation in the conspiracy terminated, his arrest and subsequent cooperation being affirmative actions disavowing or defeating the purpose of the conspiracy sufficient to constitute withdrawal. Defendant additionally contends his objective had become his alleged co-conspirators' arrest. Therefore, any statements made by him could not be found to have been made in furtherance of the conspiracy because such statements were designed to impede the conspiracy. Because this evidence represented defendant as being more deeply involved in the conspiracy than could otherwise have been shown by the state and because a large portion of the trial concerned the recorded conversations, defendant argues the erroneous admission of the recorded conversations was so prejudicial as to constitute reversible error.
In response, the state contends the recorded conversations are admissible as nonhearsay under LSA-C.E. Art. 801(D)(3)(b) as defendant failed to meet his burden of proving withdrawal from the conspiracy after it made a prima facie showing of the conspiracy's existence. The state submits the tapes demonstrate the relationship between defendant, Phillips and Veazey and are relevant to the issue of whether defendant knowingly participated in the conspiracy.
LSA-C.E. Art. 801(C) defines hearsay as a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. A "statement" is defined as an oral or written assertion. LSA-C.E. Art. 801(A). Unless authorized by the Code of Evidence or other legislation, statements constituting hearsay are inadmissible as evidence. LSA-C.E. Art. 802. LSA-C.E. Art. 801(D) enumerates those statements which are considered non-hearsay. Such statements are admissible as evidence if relevant and not otherwise excluded.
Included in LSA-C.E. Art. 801(D) are statements offered against a party which are his own statements, either in his individual or a representative capacity, LSA-C.E. Art. 801(D)(2)(a), and statements offered against a party made by a declarant while participating in a conspiracy to commit a crime and in furtherance of the objective of the conspiracy, provided a prima facie case of conspiracy has been established, LSA-C.E. Art. 801(D)(3)(b).
We agree that the trial court did not err in admitting the recorded conversations into evidence.
*746 Most of the content of the recorded conversations is not hearsay. The statements made by the participants are not assertions and were not offered to prove the truth of the matter asserted. For example, admonitions by Phillip to defendant that he should not have put the money in the suitcase, that the suitcase should have been in the trunk, that he should not report the robbery to the police, that he should not have let anyone follow him, and questions about how the robbery happened, are not assertions of any fact and were not offered to prove the truth of the assertion. The evidence was offered for the purpose of showing that the statements were in fact made and were relevant and probative, by reason of having been made, to the relationship between the parties and their connection to the criminal enterprise. See State v. Jones, 558 So.2d 546, 549 (La. 1990); McCormick, Evidence, § 249 (3rd ed. 1984).
The court of appeal correctly determined defendant's statements in the recorded conversations to constitute non-hearsay under the Code of Evidence. Statements made by defendant concerning the false robbery and in his capacity as agent for the state were not offered to prove the truth of the matter asserted therein. The jury was aware that the robbery was a falsehood which had been created by the authorities in an attempt to flush out Phillips and Veazey. Furthermore, any true statements, inculpatory or exculpatory, made by defendant during those conversations were made in his individual capacity. Such statements would constitute admissions under LSA-C.E. Art. 801(D)(2)(a) and are admissible as non-hearsay.
We also determine the trial court did not err in admitting the statements made by Phillips and Veazey into evidence under LSA-C.E. Art. 801(D)(3)(b) as statements made by co-conspirators during the course of and in furtherance of a conspiracy. That article provides for the admissibility as non-hearsay of statements offered against a party which are made by a co-conspirator while participating in and in furtherance of the objective of the conspiracy if a prima facie case of conspiracy has been established.
A prima facie case of conspiracy is presented when the state introduces evidence which, if unrebutted, would be sufficient to establish the facts of the conspiracy. State v. Nall, 439 So.2d 420, 425 (La.1983). Statements made by co-conspirators which are the object of defense counsel's hearsay objection may be considered by the trial court in making its determination as to whether a prima facie case of conspiracy has been established. State v. Myers, 545 So.2d 981, 985 (La.1989).
After the state presents a prima facie case of conspiracy, the burden of proof shifts to the defendant to present evidence showing his withdrawal from the conspiracy prior to the time the statements were made by his co-conspirators. The conspiracy is presumed to continue unless or until the defendant shows his withdrawal from or the termination of the conspiracy. United States v. Walker, 796 F.2d 43, 49 (4th Cir.1986). To prove withdrawal, a defendant must show affirmative actions made by him which are inconsistent with the object of the conspiracy. United States v. United States Gypsum Co., 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). Such affirmative actions include making a clean breast through confession to the authorities as well as notification to the co-conspirators of abandonment or withdrawal. United States v. Patel, 879 F.2d 292, 294 (7th Cir.1989), cert. denied, 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 494 (1990).
The standard for determining the admissibility of statements made by co-conspirators is less than that required to convict a defendant of conspiracy to commit an offense. Such statements, if admissible, only constitute evidence which the jury may consider in reaching its conclusion as to whether a defendant did or did not unlawfully participate in a conspiracy to commit an offense beyond a reasonable doubt. Accordingly, a trial court's determination as to the admissibility of such evidence, *747 i.e., whether the state has made a prima facie showing of a conspiracy and whether a defendant has sufficiently proven withdrawal so as to make his co-conspirators' statements admissible or inadmissible under LSA-C.E. Art. 801(D)(3)(b), will not be overturned absent clear error. See United States v. Taylor, 802 F.2d 1108 (9th Cir.1986), cert. denied, 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987).
The state introduced evidence sufficient to establish a prima facie case of conspiracy. Cannon testified as to statements made by defendant prior to his cooperation which indicated his knowledge of and participation in the conspiracy. The gas receipt showing defendant had been in Monroe the day prior to his arrest, Phillips' business card, the empty suitcase with marijuana gleanings and the $18,000 cash packaged in small bundles all tended to show the existence of the conspiracy. Veazey's testimony supported the existence of the conspiracy. The recorded conversations themselves also indicated defendant's knowledge of and participation in the conspiracy.
Having determined the trial and appellate courts did not err in concluding the state had presented a prima facie case of conspiracy, we now determine the propriety of their finding that defendant failed to carry his burden of proving his withdrawal from the conspiracy.
A defendant's arrest does not necessarily terminate his involvement in a conspiracy, United States v. Ammar, 714 F.2d 238, 253 (3d Cir.1983), cert. denied, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983) and cooperation with authorities may or may not be sufficient to show withdrawal. In United States v. Patel, 879 F.2d 292 (7th Cir.1989), cert. denied, 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 494 (1990), the Seventh Circuit concluded the defendant failed to show his cooperation with authorities constituted withdrawal from the conspiracy. The court, citing United States v. Borelli, 336 F.2d 376, 388 (2d Cir.1964), stated that:
... for withdrawal to limit a conspirator's liability and ... his exposure to statements by co-conspirators, "mere cessation of activity is not enough ...; there must also be affirmative action, either the making of a clean breast to the authorities, or communication of the abandonment in a manner calculated to reach co-conspirators and the burden of withdrawal lies on the defendant."
879 F.2d at 294.
The court in Patel noted that a clean breast to the government may not be conclusive, as a defendant may "make a clean breast one day and repent of it the next and resume participation in the conspiracy." Id. In other words, the mere fact of cooperation may not be so decisive and determinative as to constitute sufficient evidence to show withdrawal. Such cooperation may not have been had for the defendant's purpose of making a clean breast to the authorities but rather may have been had only on defendant's hope that he would obtain favorable treatment.
Defendant denied knowledge of and participation in the conspiracy at hand in his recorded statement taken the day after his arrest and cooperation with the authorities and in his testimony at trial. Although helpful to his defense, such assertions do not rebut the prima facie existence of the conspiracy nor do they meet his burden of proving withdrawal from the conspiracy prior to the time the statements were made. Furthermore, defendant's recorded statement of no knowledge and no participation made the day after his arrest and cooperation discounts his argument that such actions were sufficient to constitute a "clean breast to the government." The fact of no participation is contrary to the fact of withdrawal from participation. Under the facts of this case, we cannot say the lower courts erred in determining defendant failed to carry his burden of proving withdrawal so as to make the statements of his co-conspirators inadmissible.
Regarding whether Phillips' and Veazey's statements were made in furtherance of the conspiracy, it is not necessary that such statements actually further the objective of the conspiracy. Rather, it is sufficient that the statements were intended *748 by the declarants to promote the conspiratorial objective. United States v. Mayes, 917 F.2d 457, 464 (10th Cir.1990), cert. denied, ___ U.S. ____, 111 S.Ct. 1087, 112 L.Ed.2d 1192 (1991). In the recorded conversations, Phillips and Veazey were attempting to discover the perpetrators of the supposed robbery so as to recover the money for return to Phillips. Veazey had not yet paid Phillips the remaining $3,000 balance owed on the transaction. The lower courts did not err in determining the statements by Phillips and Veazey to have been made in furtherance of the conspiracy.
The recorded conversations were not so prejudicial, as argued by defendant, as to render them inadmissible. Having determined the lower courts did not err in concluding such evidence admissible under LSA-C.E. 801(D)(2)(a) and (D)(3)(b), we cannot say that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice, which would be necessary to declare such evidence inadmissible under LSA-C.E. Art. 403.
This assignment of error is without merit.

IV.
We next consider defendant's contention that evidentiary rulings of the trial court prevented him from presenting a defense. In this assignment of error, defendant argues the trial court erroneously excluded testimony on the state's hearsay objections and general objections where the state failed to provide grounds therefor. Furthermore, defendant claims it was unnecessary for defense counsel to object to the trial court's evidentiary rulings as the objections were made by the state when defendant was testifying during direct examination.
The court of appeal noted defense counsel neither made timely objection to the court's ruling, nor made known the substance of the evidence excluded by the trial court as required by LSA-C.E. Art. 103(A)(2). For error to be predicated on a ruling excluding evidence, that article requires that a substantial right of a party be affected and the substance of the evidence be made known to the trial court by counsel. The court of appeal concluded defendant was able to and did present a defense through his testimony and defense counsel's cross-examination and argument. Accordingly, the court of appeal concluded this assignment of error to be meritless.
Defendant argues he was prevented from presenting his defense of no knowledge of or participation in the conspiracy by the trial court's ruling sustaining hearsay objections and other general objections by the state to his testimony regarding conversations he had with his then employer in which defendant learned of the alleged roofing debt collection for Phillips. Defendant claims those conversations would have shown defendant's motivation for his actions.
Defendant argues he was also prevented, by state objection, from testifying as to instructions given him by Phillips and as to his conversation with Veazey at the motel. Defendant contends the trial court erroneously sustained the state's objections because much of what was offered was non-hearsay since such statements were not offered to show the truth of the conversations, but rather the circumstances of defendant's participation in the transaction and how he was innocently misled by Phillips. Defendant claims he was prevented from showing what, if any, inducement was made by Phillips to persuade him to go to Mississippi and what occurred while he was there.
In response, the state contends such alleged error was not preserved for review on appeal because of defense counsel's failure to make a contemporaneous objection to the trial court ruling sustaining the state's objections as well as defense counsel's failure to make an offer of proof of such evidence for review on appeal.
We agree with the court of appeal's conclusion that defendant was able to present his defense of no knowledge of or participation in the conspiracy through his testimony and the introduction of his recorded statement given to the state police, regardless *749 of the trial court ruling. There is no indication that the excluded testimony would have differed from or added to the statement given by defendant the day after his arrest and cooperation and admitted into evidence. We also agree with the appellate court that defense counsel did not preserve this alleged error for review on appeal by his failure to make a contemporaneous objection to the trial court ruling and make known the substance of such evidence for the purpose of consideration by the trial court and review on appeal. LSA-C.E. Art. 103(A)(2). There is no exception to this requirement when such testimony is solicited and objected to on direct examination. Further, any error in excluding the testimony offered by defendant did not materially affect defendant's opportunity to offer a defense and is harmless beyond a reasonable doubt.
This assignment of error is without merit.

V.
In this assignment of error, defendant claims his conviction must be reversed because of the ineffective assistance rendered by his attorney who had an actual conflict of interest, not waived by defendant, by his dual representation of defendant and Phillips during the course of defendant's trial. Defendant contends the state recognized this actual conflict when it later filed a motion to disqualify his attorney from representing Phillips in proceedings instituted against Phillips arising out of this same transaction. It is argued that had defendant had conflict-free counsel, the handling of his defense, the evidence and the witnesses would have been significantly different. As an example, defendant notes his attorney made no attempt to subpoena Phillips to testify at defendant's trial. Defendant further submits that the irreconcilability of this joint representation is underscored by the unequal stature of defendant and Phillips, courier versus seller, in this transaction. Because this actual conflict of interest questions the integrity of defendant's trial, defendant contends his conviction should be reversed.
The state contends no actual conflict of interest existed by defense counsel's dual representation of defendant and Phillips during defendant's trial. It contends that it filed the motion to disqualify defense counsel from continuing to represent Phillips because of the potential conflict which may arise during the proceedings which have been instituted against Phillips by defendant being called as a state witness. The state submits that calling defendant as a witness in the action against Phillips would likely infringe on defendant's attorney-client privilege with his counsel as his attorney would be required to cross-examine him in his testimony against Phillips. The state argues defendant's assertions regarding an actual conflict of interest resulting from the dual representation are merely speculative and insufficient to warrant reversal of defendant's conviction.
In reviewing this issue, the court of appeal concluded there to be insufficient record evidence to evaluate defendant's claim of ineffective assistance of counsel and proclaimed defendant's remedy to be that of post-conviction relief where the quality of his attorney's performance can be fully developed and explored.
We note that defendant did not object to this dual representation prior to or during his trial. Defendant's trial attorney continued to represent him until his withdrawal subsequent to the trial court's grant of the state's motion to disqualify him from continuing to represent Phillips.
Multiple representation does not presumptively result in the ineffective assistance of counsel so as to violate constitutional guarantees unless it gives rise to a conflict of interest. State v. Kahey, 436 So.2d 475, 485 (La.1983). Where there has been no objection to the multiple representation prior to or during trial, a defendant must show an actual conflict of interest adversely affected his attorney's performance in order to establish a claim of ineffective assistance of counsel in violation of the Sixth Amendment. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980).
*750 We, like the court of appeal, do not presume the dual representation in the present case to have resulted in ineffective assistance of counsel. Nevertheless, we note that the circumstances present a serious issue which must be addressed at some point in the proceedings. We decline to relegate defendant's remedy to one of post-conviction relief. In the interest of justice and judicial economy, we remand this case to the trial court for a full evidentiary hearing on this issue before defendant's conviction is unconditionally affirmed. See State v. Wille, 559 So.2d 1321 (La.1990).

VI.
In defendant's remaining assignments of error, defendant requests that we remand this case for resentencing as a result of the trial court's failure to properly articulate reasons for sentencing under LSA-C.Cr.P. Art. 894.1. Additionally, defendant claims his sentence is unconstitutionally excessive as disproportionate to the offense for which he has been convicted. The court of appeal concluded the trial court to have adequately articulated its reasons for sentencing in compliance with LSA-C.Cr.P.Art. 894.1 and determined the sentence not to be unconstitutionally excessive given the seriousness of the offense committed. Accordingly, defendant's sentence was affirmed.
Defendant argues the trial court's articulation of reasons for the imposition of sentence is inadequate to justify his near-maximum sentence in that the trial court failed to give due weight to factors which would have compelled a lesser sentence. Defendant states the trial court did not note defendant's graduation from high school, his honorable discharge from the Air Force after four years of service, his continuing employment throughout his adult life, and his lack of propensity to commit further criminal offenses due to the lack of criminal activity in his past and since his arrest in this case several years prior to sentencing. Defendant contends the trial court gave very little weight to the fact of his cooperation which brought other offenders, namely the buyer and seller in this transaction, to justice. Furthermore, defendant argues the court improperly considered, in sentencing, the foul language used by defendant in the recorded conversations he had with Phillips and Veazey.
Defendant also argues his sentence is unconstitutionally excessive. Because of his minimal participation in the transaction, defendant submits his actions are not as blameworthy and egregious as other offenders within the same class. Defendant argues his sentence is disproportionate and a needless imposition of pain and suffering under the facts which gave rise to his conviction.
To the contrary, the state argues the trial court did not abuse its much discretion in imposing this sentence within the statutory limits. The state contends the trial court to have fully complied with the requirements of LSA-C.Cr.P.Art. 894.1, but even if such were not so, the state argues remand is unnecessary as the record contains an adequate factual basis for defendant's sentence. The state further contends defendant's sentence is not unconstitutionally excessive considering the seriousness of the offense committed, a fact particularly emphasized by the trial court in its reasons for sentencing.
The record indicates the trial court reviewed defendant's pre-sentence investigation report and correspondence submitted on defendant's behalf prior to sentencing. The following factors were considered by the trial court in imposing sentence. A divorced 29-year-old male at the time of sentencing, defendant was at that time an employed Texas resident with one minor child. Fined for a 1983 South Carolina DUI conviction and placed on two years probation for a 1988 Texas DWI conviction, the trial court noted defendant had thus far done well under that supervised probation and completed a five-week substance abuse rehabilitation course. The trial court was unsure whether defendant, although a first felony offender who cooperated with law enforcement officials in conjunction with the supervised probation, would likely engage in criminal conduct in the future, and stated it was concerned about the foul language *751 used by defendant in the conversations recorded pursuant to defendant's cooperation with authorities in the instant matter. The trial court noted defendant attempted to introduce a controlled dangerous substance into a community, the only provocation being economic gain with no substantial grounds tending to excuse or justify such criminal conduct. The trial court further remarked on the large amount of marijuana defendant transported and determined defendant, although not a major participant in the conspiracy, to be in need of correctional treatment in a custodial environment which could be most effectively provided by defendant's commitment to an institution. Additionally, although the maximum penalty imposed could be five years under the law in effect at the time of defendant's arrest, the trial court noted the penalty for conspiracy to possess marijuana with intent to distribute had been substantially increased, an indication of the seriousness with which the legislature views this offense. The sentencing range being zero to five years with a maximum fine of $2,500, the trial court sentenced defendant to four and one-half years at hard labor with a fine of $1,250, in default of which defendant is to serve an additional six months. The trial court concluded a lesser sentence would deprecate the seriousness of defendant's offense.
In reviewing a sentence for excessiveness, we first determine whether there has been compliance with LSA-C.Cr.P. Art. 894.1 in the imposition of sentence. If so, a second inquiry is made to determine whether the sentence is too severe given the circumstances of the case and the defendant's background. If a needless imposition of pain and suffering and grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, the sentence is considered unconstitutionally excessive as violative of LSA-Const. Art. 1, § 20. Both inquiries must be made to determine if the sentence imposed is proper.
Full compliance with LSA-C.Cr.P. Art. 894.1 is not required where the record clearly shows an adequate factual basis for the sentence imposed as the goal of the article is an articulation of a factual basis for the sentence rather than rigid or mechanical compliance with its provisions. State v. Lanclos, 419 So.2d 475 (La.1982). It is not necessary that the trial court list every aggravating and mitigating factor as long as the record reflects the guidelines of LSA-C.Cr.P.Art. 894.1 were adequately considered. State v. Smith, 433 So.2d 688 (La.1983).
We conclude the trial court adequately complied with the requirements in LSA-C.Cr.P.Art. 894.1. The mitigating factors which defendant claims were not considered were included in the pre-sentence investigation report which the court indicated it reviewed prior to sentencing. The court took into consideration the defendant's personal history and prior criminal record as well as the seriousness of the offense. Accordingly, the first part of the two-pronged test for excessiveness of sentence has been satisfied. However, our inquiry does not end here. We must next determine if the sentence, imposed in compliance with LSA-C.Cr.P.Art. 894.1, is nevertheless unconstitutionally excessive.
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The sentence imposed will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Square, 433 So.2d 104 (La.1983).
The trial court carefully reviewed the pre-sentence investigation report and considered the guidelines provided in LSA-C.Cr.P.Art. 894.1. As mentioned before, there are several mitigating factors in defendant's favor. The trial court noted, however, the evidence established the transportation of a large amount of marijuana *752 across two state lines. The drugs, some 15-25 pounds of marijuana, were to be distributed into the community in Mississippi. Given the seriousness of the offense, the volume of narcotics involved and the value thereof, the sentence imposed cannot be said to be unconstitutional. The sentence imposed is within the discretion of the trial court.

VII.
For the reasons assigned, the conviction and sentence are conditionally affirmed. The case is remanded to the trial court for an evidentiary hearing on the issue of ineffective assistance of counsel due to conflict of interest. If the district court determines that the claim of ineffective assistance of counsel has merit, the court should set aside the conviction and order a new trial. If the district court determines that the ineffective assistance of counsel claim is without merit, the defendant's right to appeal from that ruling is reserved.
CALOGERO, C.J., dissents and assigns reasons.
LEMMON, J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissenting.
The record in this case shows that the defendant acted as an agent of the police when he called Phillips and Veazey and attempted to smoke them out according to a false scenario given to him by the officers. Defendant's end of his telephone conversations with Phillips and Veazey did not represent his own statements in either his individual or representative capacity. La.C.Ev. art. 801 D(2)(a). The defendant simply conveyed the statements of his principals "concerning a matter within the scope of his agency ... made during the existence of the relationship." La.C.Ev. art. 801 D(3)(a). The Code considers these statements as admissions of the principal, not of the agent, according to the general rule that "[w]hen a party to the suit has expressly authorized another person to speak, it is an obvious and accepted extension of the admission rule to admit against the party the statements of such persons." C. McCormick, On Evidence § 259 (4th ed. 1992). Article 801 D(3)(a) does not purport to sanction the fundamentally unfair practice of introducing an agent's statements made at the direction and on the behalf of his principal in an action against the agent brought by the principal. The defendant's statements were therefore not admissible against him as admissions. Whatever probative value they may have had in showing his connection with Phillips and Veazey was far outweighed by the danger that the jury would confuse defendant's role as an agent of the state with the state's burden to prove him an agent for his alleged co-conspirators. La.C.Ev. art. 403.
Furthermore, while an arrest alone does not automatically withdraw a co-conspirator from the conspiracy, the defendant cooperated with the police and acted as their agent in telephone conversations that could not advance the causes of the conspiracy but were intended to destroy the illegal combination and bring the co-conspirators to justice. There is no suggestion in this case, as there was in United States v. Patel, 879 F.2d 292 (7th Cir.1989), cert. denied, 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 494 (1990), that the defendant used the telephone conversations as a means of signalling to his co-conspirators that the police were on to them. Patel also observed that "there could be other[ ]" means of withdrawing from a conspiracy than notice to the co-conspirators or death. Id. 879 F.2d at 294.
In this case, the state presented absolutely no evidence that defendant took any action in furtherance of the conspiracy after the telephone conversations. Rather, the state showed only that defendant denied his participation altogether. Defendant's apparent unstinting cooperation with the police as their agent during the telephone conversations intended to trap the co-conspirators into damning admissions marked the termination of his role in the conspiracy. I would therefore exclude the statements of Veazey and Phillips as well, and reverse the defendant's conviction on grounds that introduction of the taped *753 statements was not harmless beyond reasonable doubt.
LEMMON, Justice, dissenting.
Defendant's statements in his conversations with Phillips and Veazey were not non-hearsay under La.Code Evid. art. 801 D(2)(a) as his own statement in his individual capacity. Defendant made the statements as an agent of the police for the purpose of inducing Phillips and Veazey to act to their detriment. The police told defendant what to say in connection with the fictitious robbery, and most of defendant's statements concerned that event. His other statements were made to keep Phillips and Veazey from becoming suspicious, and he was successful in assisting the police in gathering evidence and arresting both men. I cannot fairly conclude that defendant's statements, made at police urging under these circumstances, were truly and objectively defendant's own statements.
Neither were defendant's statements admissible as made by a declarant while participating in a conspiracy and in furtherance of the objective of the conspiracy under La.Code Evid. art. 801 D(3)(b). Statements made to assist in obtaining evidence against the conspirators and bringing them to justice are hardly made in furtherance of an objective of the conspiracy. Indeed, defendant's statements to Phillips and Veazey sought to (and did) defeat the objective of the conspiracy, rather than furthering its objective. Moreover, defendant bore his burden of proving he had withdrawn from the conspiracy at the time he made the statements. His placing himself in danger of retaliation from drug dealers by luring the dealers into taped conversations about the transaction and its proceeds constituted an affirmative act evidencing his withdrawal from the conspiracy. Defendant's cooperation with the police precluded him from communicating his abandonment of the conspiracy to his co-conspirators. In fact, he was required to convey the exact opposite impression in order for the scheme promoted by the police to achieve the success that it did, resulting in the arrest of both buyer and seller in the transaction.
The statements of Phillips and Veazey in the same conversation were also not admissible as co-conspirators' statements under Article 801 D(3)(b), because defendant had withdrawn from the conspiracy at the time.
The statements, although relevant, also should have been excluded under La.Code Evid. art. 403 because their probative value was substantially outweighed by the danger of unfair prejudice. The critical issue was whether defendant knowingly participated in the marijuana transaction. Most of defendant's words in the conversation were attributable to the police, and neither Phillips nor Veazey ever specifically mentioned the existence of marijuana. The unfair prejudicial effect of these recorded conversations, which defendant instigated for the benefit of the police, significantly outweighed the probative value as to any knowledge defendant had that he was a courier in a drug transaction.
Finally, the erroneous admission of these conversations was not harmless beyond a reasonable doubt. The street language that was necessary to achieve the desired effect in reporting the fictitious robbery shocked the trial judge and undoubtedly had a substantial negative effect on the jurors. There was a reasonable likelihood that the impact of these conversations, in which defendant willingly feigned participation in the conspiracy in order to induce incriminating statements and actions by Phillips and Veazey, contributed to the jury's verdict.
Although I would reverse the conviction because of the prejudicial admission of the hearsay conversations and would not reach the issue of the exclusion of defendant's testimony regarding his employer's statements, I note that there was no need for defendant to object to the trial judge's maintaining the prosecutor's objection. The trial judge was well aware that defendant wanted the evidence admitted. Nevertheless, because defendant failed to notify the court of the substance of the evidence under La.Code Evid. art. 103 A(2) and because the evidence was probably cumulative of the evidence in defendant's *754 statement to the police, any error in excluding the evidence was harmless.