STEPHEN J. WINDHORST, Judge.
|2On September 10, 2014, a twelve-person jury found defendant, Carey Garrison, guilty of the lesser included offense of manslaughter, in violation of La. R.S. ld^l.[1] Defendant was sentenced to 30 years imprisonment with the Department of Corrections.[2] For the reasons that fol *167 low, we affirm defendant’s conviction and sentence.
FACTS
On January 17, 2011, Deputy Steven Dorsey with the Jefferson Parish Sheriffs Office (JPSO) was dispatched to the 1800 block of Buceóla Ave. in response to gunshots fired and was' the first to arrive on the scene.' He observed a young black male, who was later identified as the victim, Anthony Williams,[3] lying on the ground in front of 1833 Buceóla Avenue.[4]
IsDet. Matthew Vasquez with JPSO was the lead investigator in charge of the victim’s homicide. At the scene, Det. Vasquez found blood evidence and four spent casings in close proximity to where the victim was lying. He took statements from Jerome Victor and Mi’Kail Hardie-way. Det. Vasquez then drafted .an arrest warrant for. defendant and a search warrant for his residence. He executed the search warrant, but he did not find anything of evidentiary value, and he was unable to locate defendant to arrest him. Approximately ten days after the homicide, the Jackson police department in Mississippi coiitacted Det. Vasquez because defendant wanted to turn himself in. Det. Vasquez faxed the Jackson police department a copy of the warrant and defendant was booked as a fugitive. Det. Vasquez travelled to Mississippi, advised defendant of his rights,‘ and obtained a statement from him. Defendant-advised Det. Vasquez that he heard about the victim’s death, but said he was not in the area- at the .time, nor did ■ he fire a gun that day. Defendant was then scheduled for extradition to Jefferson Parish.
Det. Vasquez testified that he was contacted by Marquell Schuster, who said he overheard defendant bragging about killing the victim on Treon “Tweet” Florant’s cell phone speaker.[5] Mr. Schuster said that Mr. Florant and defendant argued because Mr’. Florant was friends with the victim. Mr. Schuster stated he was 100% sure it was defendant on the other line. Det. Vasquez showed Mr. Schuster á photographic lineup, ancl he identified defendant as the individual on the cell phone speaker.
Det, Vasquez testified that defendant was extradited’ to Jefferson Parish, where he was again' advised of his rights, and he gave a second statement. Defendant'requested to meet with him and provide a second statement because he’|4wanted to correct the things he lied about in the first statement. In the second statement defendant took responsibility, for -shooting the victim, but stated¡ he was acting.in self-defense. Defendant said he shot the victim, fled, and threw the'gun in a drainage -canal. . Det; Vasquez ■ testified that during a non-recorded portion of their conversation, defendant said something to the effect óf, “Can’t I just plead guilty to manslaughter and get this over with?” Defendant took Det. Vasquez to the location where he threw the gun, but they were unable to locate it. Defendant then *168 gave Det. Vasquez a third statement.[6] Det. Vasquez testified that nothing in his investigation supported defendant’s claim that he was acting in self-defense, other than his own statement.
On the day of the shooting, Jerome Victor lived one block behind Buceóla Ave. Mr. Victor testified that he was inside watching the Hornets game when he heard gunshots. He went outside to check on his children and brought them inside. He then went back outside to see what happened and observed two black males walking through his front yard. He noticed that one of the males appeared to be hurt because the other male was helping him walk. Mr. Victor testified that the males were heading up Plaza Dr., they made a phone call, .and then a white.SUV picked them up. One of the males had something in his hand, but he did not see a gun. He further testified that he was shown two lineups and he identified defendant as one of the individuals he saw walking through his yard.
Sixteen year old Mf Kail Hardieway testified that she lived across the street from defendant’s house and she was outside her home when the victim .was shot.' When she went outside, defendant and the victim were already arguing in front of defendant’s house. - She did not see the victim arrive at the scene, but thought | ^defendant and the victim were fighting. She testified that when she first saw the gun, it was on the victim’s hip. Defendant took the gun from the victim and she witnessed defendant shoot the victim. After the first gunshot, she went to the car porch with her cousin and sister. She heard more gunshots, but testified that she did not witness the additional gunshots. She saw defendant head towards Plaza Dr. after the shooting. Miss Hardieway acknowledged she gave a statement to Det. Vasquez three days after the shooting, and after seeing her statement, she further testified that she. remembers telling Det. Vasquez that she saw defendant stand over the victim and shoot him several times. She testified that her memory of the events would have been better at the time the statement was taken. Miss Har-dieway testified that she was shown a lineup and positively identified the defendant as the shooter.
Marquell Schuster, who was serving a prison sentence in Texas, testified that he knew defendant from middle school. He did not remember making a statement to Det. Vasquez about a murder while he was in the Jefferson Parish Juvenile Assessment Center. He read his prior statement in an attempt to refresh his memory, but testified that he did not remember making any statement, and that the statement was a lie. Mr. Schuster admitted he was asked to identify defendant from a lineup.
The State and defense stipulated that Dr. Susan Garcia was qualified as an expert in. forensic pathology. Dr. Garcia prepared an autopsy report. She testified that the victim had seven identifiable entrance gunshot wounds, six of which entered the body and two of which did not exit. The victim had a graze wound on his head which accounted for the seventh gunshot wound. One of the gunshot wounds was to the victim’s left buttock with the exit wound around the clavicle, indicating that it was likely the victim was in a bent position when the wound was |f,sustained. Dr. Garcia further testified that the victim had an injury to the back of his upper shoulder that could possibly be an eighth *169 gunshot wound.[7] She classified the victim’s death as a homicide.
It was stipulated that Jene Rauch was an expert in the field of firearms and tool marks examination. She testified that the four .40 caliber fired cartridge casings recovered were fired from the same .40 caliber weapon. The two copper-jacketed projectiles recovered were consistent with a Smith & Wesson .40 caliber pistol, but she was unable to determine if the projectiles were fired from the same weapon.[8] She testified that Jefferson Parish does not use the presumptive gunshot residue kits anymore because they give false positives, and that Jefferson Parish uses the confirmatory test, but it has to be sent off to another lab to confirm that it is actually gunpowder.
After a trial on the merits, a twelve-person jury found defendant guilty of the lesser included offense of manslaughter, in violation of La. R.S. 14:31. Defendant was sentenced to 30 years imprisonment with the Department of Corrections. Defendant’s motions for new trial and post-verdict judgment of acquittal were denied. Defendant also filed a motion to reconsider sentence arguing that the trial court failed to consider the mitigating factors in his case and his sentence was excessive. The trial court denied defendant’s motion to reconsider sentence. This appeal followed.
ASSIGNMENT OF ERROR ONE
In his first assignment of error, defendant contends that the -evidence was insufficient to support a manslaughter conviction because the victim’s death was a justifiable homicide.
17The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond - a reasonable doubt. State v. Smith, 12-247 (La.App. 5 Cir. 12/11/12), 106 So.3d 1048, 1053, writ denied, 13-0494 (La.07/31/13), 118 So.3d 1120. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Smith, 106 So.3d at 1053.
When the trier of fact is faced with conflicting testimony, the determination of that fact rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 05-59 (La.App. 5 Cir. 05/31/05), 904 So.2d 830, 833. It is not the function of the appellate court to assess credibility or reweigh the evidence. State v. Williams, 98-1146 (La.App. 5 Cir. 06/01/99), 738 So.2d 640, 648, writ denied, 99-1984 (La.01/07/00), 752 So.2d 176. A *170 reviewing court must consider the whole record, and determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. Williams, 738 So.2d at 648. The reviewing court is not required to determine whether | ^another possible hypothesis of innocence suggested by a defendant offers an exculpatory explanation of events. State v. Mitchell, 09-996, (La.App. 5 Cir. 05/25/10), 40 So.3d 1122, 1126, writ denied, 10-1557 (La.10/21/11), 73 So.3d 370. The reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that -a rational juror could not have found proof of guilt beyond a reasonable doubt. Id. at 1126-1127.
Defendant was charged with second degree murder, but he was convicted of the lesser included offense of manslaughter. La. R.S.'14:31 provides for two separate definitions of manslaughter:' specific intent manslaughter and felohy/misdemeanor manslaughter. The trial court instructed the jury regarding specific intent manslaughter.- Manslaughter is a first or second degree murder that is committed in sudden passion or heat of blood immediately caused by provocation sufficient- to deprive an average person of his self-control and cool reflection. La. R.S. 14:31A(1). Provocátion shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had' actually cooled, or' that an average person’s blood would have cooled, at the time the offense was committed. La. R.S. 14:31 A(l).
Defendant does not deny that he shot and , killed the victim. He contends his actions were justified because he acted in self-defense.[9] When a defendant in a homicide prosecution claims self-defense, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Reed, 11-507 (La.App. 5 Cir. 02/14/12), 88 So.3d 601, 607, writ denied, 12-644 (La.09/14/12), 97 So.3d 1014. The, fact that an offender’s conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime | abased on that conduct. La. R.S. 14:18; State v. Sparkman, 13-640 (La.App. 5 Cir. 02/12/14), 136 So.3d 98, 106, writ denied. 14-477 (La.11/26/14), 152 So.3d 897, According to La. R.S. 14:20A(1), a homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent- danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger,
A person Who is the aggressor or who brings on a difficulty cannot claim self-defense unless he withdraws from the conflict in good faith. La. R.S. 14:21. While there is no unqualified duty to retreat, the possibility' of escape from an altercation is a recognized factor in determining whether the defendant had a reasonable belief that deadly force was necessary to avoid the danger. Sparkman, 136 So.3d at 107.
The determination of a defendant’s capability rests on a two-fold test: (1) .whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger;, and (2) whether deadly force was necessary to prevent the danger. State v. Sinceno, 12-118 (La.App. 5 Cir. 07/31/12), 99 So.3d 712, 720, writ denied, 12-2024 (La.01/25/13), 105 So.3d 713. The jury is the ultimate *171 fact-finder in determining whether the State negated self-defense beyond a reasonable doubt. Id.
The State presented evidence to negate defendant’s claim of self-defense. Det. Vasquez testified that nothing in his investigation supported the contention that defendant was acting in self-defense, other than defendant’s own statement. Det. Vasquez spoke with Mr. Schuster, who told him he overheard defendant on a cell phone speaker bragging about killing the victim. Miss Hardieway testified that during the argument between defendant and the victim, defendant grabbed the gun from the victim, and she witnessed defendant shoot the victim." The jury also heard I mtestimony from Dr. Susan Garcia who testified that the victim had seven identifiable gunshot wounds, including one in the back.
While defendant did not testify, in one of his statements to the police, which were published to the jury, defendant said he was defending himself from the victim, who was the aggressor. Miss Hardieway testified that the victim, not defendant, brought the gun to. the scene where the incident occurred.
The jury was presented with all of the evidence and heard defendant’s conflicting testimony from a published audio records ing and the fact that the victim brought the gun to the scene. Additionally, the jury heard testimony from Dr. Garcia that the victim was shot a minimum of seven times, including once in the buttock which indicated that he was bent over at the time of the shooting. The jury obviously believed the version of events established by the State’s witnesses and that defendant did not act in self-defense. The evidence presented was sufficient for the jury to conclude that the State had negated defendant’s claim of self-defense beyond a reasonable doubt, and to support'defendant’s conviction for manslaughter. ■ Accordingly, defendant’s first assignment of error is without merit.
ASSIGNMENT OF ERROR TWO
In his second assignment of error, defendant contends his sentence is unduly harsh and excessive. Defendant argues that the trial court erred by imposing a 30-year sentence on him without considering the exceptional and mitigating circumstances of a juvenile defendant in compliance with La. C.Cr.P. art. 894.1 and Miller v. Alabama, — U.S. —, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012).
Appellate review of sentences for excessiveness is a two-pronged inquiry. State v. Lobato, 603 So.2d 739, 751 (La.1992). First, the record must show that the trial court complied with La. C.Cr.P. art. 894.1. Id. Full compliance with La. C.Cr.P. pt. 894.1 is not required where the record clearly shows an adequate Infactual basis for the sentence imposed. Id. The goal of this article is an articulation of a factual basis for the sentence, not a rigid or mechanical compliance with its provisions. Id. The trial court is not required to list every aggravating or mitigating circumstance when the record reflects that the trial court considered the guidelines of La. C.Cr.P. art. 894.1. Id.; State v. Yelverton, 12-745 (La.App. 5 Cir. 02/21/13), 156 So.3d 53, 63. Where the record clearly shows an adequate factual basis for the sentence imposed, as it does here, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); Yelverton, 156 So.3d at 63. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. *172 Jones, 398 So.2d 1049 (La.1981). There is no requirement that specific matters be given any particular weight at sentencing. State v.Harris, 11-626 (La.App. 5 Cir. 11/27/12), 105 So.3d 914, 931. The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4D.
Second, the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Lobato, 603 So.2d at 751; State v. Nguyen, 06-969 (La.App. 5 Cir. 04/24/07), 958 So.2d 61, 64, writ denied, 07-1161 (La.12/07/07), 969 So.2d 628. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.01/15/02), 805 So.2d 166, 174, citing Lobato, 603 So.2d at 751.
| 12When imposing a sentence, a trial judge has broad discretion in imposing a sentence within statutory limits, and a reviewing court may not set aside a sentence in absence of manifest abuse of discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey, 07-67 (La.App. 5 Cir. 05/29/07), 960 So.2d 1127, 1130, writ denied, 08-1649 (La.04/17/09), 6 So.3d 786.
In Miller v. Alabama, supra, the United States Supreme Court held that a state’s statutory sentencing scheme that mandates life imprisonment without parole, for those offenders under the age of 18 years at the time they committed a homicide offense, violates the Eighth Amendment prohibition of “cruel and unusual punishments.” Miller, 132 S.Ct. at 2460,[10] Defendant was not sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence and therefore, Miller is inapplicable.
In 2011, at the time the offense was committed, La. R.S. 14:31B provided “whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years.” Defendant’s sentence of 30 years is not unduly harsh or excessive. Similar sentences for similar crimes have been upheld by this Court. State v. Lewis, 10-386 (La.App. 5 Cir. 02/15/11), 61 So.3d 78, 85 (Defendant, a 17-year-old, was convicted of manslaughter after killing another teenage boy during a fight and was given the maximum sentence of forty years.); State v. Lewis, 08-1317 (La.App. 5 Cir. 05/26/09), 16 So.3d 385, 393, cert. granted, 09-1404 (La.04/30/10), 34 So.3d 282, aff'd in part and rev’d in part, 09-1404 (La.10/22/10), 48 So.3d 1073 (Defendant, a 16-year-old first-time offender, was | ^convicted of manslaughter after killing an eighteen-year-old and received a thirty-year sentence.)
Four victim impact statements were read on the record from the victim’s family members who described the loss and pain they felt on a daily basis. The trial court also heard testimony from defendant’s father and defendant. Defendant apologized for his actions, maintained that he was protecting himself and his family from the *173 victim, and he testified that he had to shoot the victim.
The trial judge said she took into account all the testimony at trial which included the mitigating factors argued by defendant. The trial judge stated that this was a sad time for the victim’s family who lost a life as well as for defendant’s family who would lose defendant to the Department of Corrections for a long period of time because of what occurred. The trial judge further stated that “nowadays everybody is quick to grab a gun and start shooting” and when that occurs someone usually ends up dead. The trial judge found that defendant was responsible for his actions.
While the trial judge did not list any further reasons for the sentence imposed, the record established a factual basis for defendant’s sentence. Even though the victim brought the gun to the scene, defendant managed to take the gun from him during an argument. Instead of defendant taking a non-fatal action, he elected to shoot the victim a minimum of seven times, including once in the back. Considering the circumstances of this case, the trial court did not abuse its discretion in imposing a 30-year sentence. Accordingly, defendant’s argument is without merit.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1976); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review of the record reveals there are no errors patent that require corrective action.
CONCLUSION
For the l’easons stated above, we affirm defendant’s conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED

. Defendant was indicted by a Jefferson Parish Grand Jury on June 2, 2011, with one count of second degree murder, a violation of La. R.S. 14:30.1.

. On October 15, 2014, defendant appeared for a modification of his sentence. Defendant was informed that his sentence was to be served concurrently with any other sentence *167 he may be serving and he was informed of the delay period for filing an appeal and post-conviction relief.

. Yoktomyra Singleton was the decedent’s older sister and identified a picture of the decedent at trial.

, In the trial transcript, the address is referred to as 1833 Buceóla Ave. and 18S3 Buceóla Ave. The physical evidence lists the address as 1833 Buceóla Ave. For consistency purposes, we will.refer to 1833 Buceóla Ave.

,Mr. Florant was interviewed. He said that the cell-phone was not his; rather, it was a female's cell phone who was with them. Mr. Florant substantiated the statement given by Mr. Schuster. , . ,

. Defendant stated that he threw the gun in the drainage canal at Rue Louis Phillipe, close to the corner of Sauvage, where it comes to a "T” in the canal. Defendant described the gun as silver and black.

. A toxicology report showed the victim had marijuana metabolite in his system.

. Ms. Rauch also testified that the copper fragment she received was too small to obtain any information from it.

. The jury was. instructed on the responsive verdict of not guilty, wherein a homicide is justified when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm, and that the killing is necessary to save himself from that danger.

. Miller, supra, required a sentencing court to consider a defendant's youth and characteristics as mitigating circumstances before deciding whether to impose the harshest penalty for juveniles who have committed a homicide offense. State v. Davis, 15-118 (La.App. 5 Cir. 6/30/15), 171 So.3d 1223.