463 So.2d 714 (1985)
STATE of Louisiana
v.
Renee PICCHINI.
No. KA-2345.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1985.
Rehearing Denied February 26, 1985.
*716 Salvatore Panzeca, Suzette Powers of Racivitch, Carriere, Panzeca & Charbonnet, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., David Legett, Law Clerk, New Orleans, for appellee.
Before KLEES, CIACCIO and WARD, JJ.
CIACCIO, Judge.
Renee Picchini was charged with "attempted unnatural carnal copulation." R.S. 14:89 and 14:27. She was found guilty as charged after a bench trial. She was sentenced to serve six (6) months in Parish Prison, the sentence was suspended and the defendant was placed on six (6) months active probation and ordered to pay $174.00 and to refrain from escort service employment. Defendant appeals relying upon five (5) assignments of error. We affirm the conviction and sentence.
The facts in this case are in conflict.
On March 3, 1983, Officer Ken Meynard of the Jefferson Parish Sheriff's Office, Vice Squad, was investigating an escort service known as The House of the Rising Sun Escort Service. The investigation was conducted in conjunction with the New Orleans Police Department Vice Squad. After obtaining a room at the Fairmont Hotel, at approximately 1 A.M. on March 3, 1983, Officer Meynard, assisted by New Orleans Vice Officer David Henley, contacted the escort service and made an appointment to have a girl sent to his room. After the service called to confirm the request, Officer Meynard requested a short girl with dark hair. About 35 minutes later, the defendant, known as "Kim", arrived at the officer's hotel room. Upon entering the room she began a search and then stated that she wanted $60 for the escort fee and $300 for herself. Officer Meynard handed *717 her four $100 bills which she placed in her purse. Defendant and Officer Meynard disrobed and Ms. Picchini attempted to commit an oral sex act upon Meynard. Meynard advised the defendant that he was a policeman and she was placed under arrest. She was allowed to cover herself with a sheet. New Orleans Police Officer David Henley, who also participated in this undercover operation, was with Officer Meynard until shortly before the defendant's arrival at the room. He observed the defendant's arrival at the hotel room as he stood near a hallway fire escape. At approximately 2 A.M., Meynard summoned Henley to the room where Henley identified himself to the defendant as she was lying in bed, nude, with a sheet over her. Meynard advised Henley of what had transpired. Henley then recovered the four $100 bills from the defendant's purse and checked their serial numbers. The numbers matched the recorded money list.
According to Renee Picchini, she went to the Fairmont Hotel in response to a request for an escort. She searched the room for weapons in order to assure herself of her safety as the undercover officer had told her that he was a drug dealer and she was not to tell anyone of his whereabouts. According to the defendant, Meynard then pulled out $300 and tried to solicit her. She requested $60.00 escort fee and the right to contact her employer by phone, but she refused. She was placed under arrest and told that if she cooperated with police in order to secure an arrest of the escort service's owner, Ken Brouilette, that she would only face a misdemeanor charge. Ms. Picchini denied that she had undressed and she also denied that she had attempted to engage in oral sex.

Assignment of Error No. 1
Defendant, by this assignment of error, contends that the trial judge erred when he granted a mistrial on the state's motion following a disclosure by the trial judge that he and his family had represented the target of this probe, one Ken ("Frenchy") Brouilette. Specifically, the defendant contends that the judge erroneously granted a mistrial in her first trial, which resulted in her current trial and conviction, subjecting her to double jeopardy.[1] Generally, an error cannot be availed of after verdict unless it is objected to at the time of its occurrence. C.Cr.P. Art. 841. However, the plea of double jeopardy is not a matter which is waived by the defendant's failure to object to an allegedly improper grant of a mistrial. C.Cr.P. Art. 594. State v. Simpson, 371 So.2d 733 (La. 1979).
Code of Criminal Procedure Article 596 sets forth the requirements for double jeopardy:
C.Cr.P. Art. 596. Requirements for double jeopardy:
Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
When a defendant pleads not guilty, in a bench trial, jeopardy begins when the first witness is sworn at the trial on the merits. C.Cr.P. Art. 592.
This constitutional safeguard against double jeopardy protects a defendant in a criminal proceeding from repeated prosecutions for the same offense, and it prevents repeated convictions and punishments for the same offense. C.Cr.P. Art. 591. State v. Simpson, supra. There are however, certain statutorily prescribed exceptions to the rule that a person shall not be twice put in jeopardy of life or liberty for the same offense. C.Cr.P. Arts. 591, *718 595. More particularly, where a mistrial is legally ordered under La. Code of Criminal Procedure Article 775, double jeopardy does not attach. That article provides:
Art. 775. Mistrial; grounds for
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
In this case, the trial judge gave the following basis for recusal:
BY THE COURT:
During the testimony of the witness that was on the stand the name of Kent Brouillette or Frenchy Brouillette was brought forward.
This is this Court's first knowledge that it is alledged that Mr. Brouillette was the owner.
BY MR. PANZECA:
Target.
BY THE COURT:
Target as the owner of the House of the Rising Sun of which it is alleged that Miss Picchini is employed by. At the time that the name was brought forward I recessed in order to inform both attorneys that for years I have represented, that I had represented Mr. Brouillette before taking the bench. He had been represented by both my father, my brother and myself on numerous occasions as defense attorneys. With those facts I believe Mr. Panzeca spoke to Miss Picchini and did not care to file a motion to recuse.
BY MR. PANZECA:
That is correct, your Honor.
BY THE COURT:
However, the State does desire to file such a motion. You are filing such a motion, Miss Sharpe?
BY MISS SHARPE:
Yes, your Honor.
BY THE COURT:
On those basis in order to alleviate any question of impropriety I will grant the State's motion. I will recuse myself from the case. I will order that both cases
* * * * * *
BY THE COURT:
I will have to declare a mistrial. I will declare a mistrial. [TR 12-13]
The Louisiana Code of Criminal Procedure sets forth certain mandatory grounds for recusal, that is:
Art. 671. Grounds for recusation of judge
In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
* * * * * *
It is apparent that the trial judge in this case was of the opinion that he could not conduct a fair and impartial trial. Thus, the law mandated his recusal. Since this was the case, had this action not been taken it would have resulted in a legal defect in the proceedings which would have made any judgment entered reversible as a matter of law. C.Cr.P. 775(3).
*719 Additionally, once the judge recused himself it was physically impossible to proceed with the trial, particularly since the judge was the fact trier in this instance.
Accordingly, we find that the mistrial was one legally ordered under Louisiana Code of Criminal Procedure Article 775 and as such, was an exception to the general rule that "[n]o one shall be twice put in jeopardy of life or liberty for the same offense." C.Cr.P. Art. 591. The defendant was properly retried following the mistrial. Double jeopardy did not attach.
For the reasons assigned, this assignment lacks merit.

Assignment of Error No. 2
Defendant alleges by this assignment that the bill of information is fatally defective in that it does not adhere to proper form (C.Cr.P. Art. 465); it is unconstitutionally vague (U.S. Const., Amend. 6; La. Const. Art. 1, Sec. 13); and it does not charge a crime punishable under a valid statute.
Except for the issue of vagueness, the defects of which the defendant complains are matters which are properly raised by a motion to quash the bill of information filed with the district court. C.Cr.P. Art. 532(1), (2).
Our review of the record indicates that these objections were not raised by the motion to quash filed with the district court. Accordingly, these objections have been waived.
With regard to the allegation that the bill of information is unconstitutionally vague, we have reviewed this issue as an error discoverable on the face of the record. C.Cr.P. Art. 920(2).
The bill of information, as originally drafted, charged that the defendant "did wilfully and unlawfully attempt to have unnatural carnal copulation with one Kim Meynard, in that she, the said Renee Picchini did attempt to place her mouth upon the penis of the said Kim Meynard." This charge was lined through and on August 29, 1983 it was made to read "did wilfully and unlawfully solicit one Kim Meynard with the intent to engage in unnatural carnal copulation for the amount of $400.00." This amendment was lined through, and on December 19, 1983, it was made to read "amended to original charge of attempted unnatural carnal copulation."
Although the bill of information is less than ideally drafted; when the final amendment is read in conjunction with the original draft of this count, it becomes apparent that the defendant is charged with an attempted crime against nature, in violation of Revised Statute, Title 14 Section 89 and Title 14 Section 27.
The bill of information is therefore, sufficient to notify the defendant of the crime charged. C.Cr.P. Art. 464. U.S. Const., Amend. 6; La. Const., Art. 1, Sec. 13.
For this reason, assignment of error number 2 lacks merit.

Assignment of Error No. 3
The defendant contends, by this assignment of error, that the statute under which she was prosecuted, namely Revised Statute Title 14, Section 89, is unconstitutional. More specifically, she argues that the statute violates her constitutional right of privacy, because in this case the crime charged involves unnatural carnal copulation between consenting adults without solicitation for compensation. Defendant further argues that "The definition of the crime, is unconstitutional because it requires and/or promotes selective prosecution.... The State chose, and will always choose, one party to be prosecuted. It would be impossible for the State to prove its case unless one of the consenting parties turns on the other".
Generally, in order to preserve an alleged error for consideration on appeal, the Code of Criminal Procedure requires that an objection be made to the irregularity at the time of its occurrence and that it be designated in a written assignment of error. C.Cr.P. Arts. 841, 844. Only those errors which are so designated, or those errors patent on the face of the record may be reviewed on appeal. C.Cr.P. Art. 920.
*720 The courts have dispensed with the necessity for objection and compliance with the assignments of error procedure in those instances where an attack is levied upon the facial constitutionality of a statute. State v. Lee, 364 So.2d 1024, note 4 (La.1978). Rather, such allegations have been considered as error discoverable by a mere inspection of the pleadings and proceedings without an inspection of the evidence. C.Cr.P. Art. 920(1). State v. Lee, supra, See: State v. Stewart, 325 So.2d 828 (La.1976).
In this case, the defendant did not file a motion to quash the bill of information on the grounds that the statute was unconstitutional. Accordingly no hearing was held nor evidence adduced. C.Cr.P. Arts. 532(1), 535-536. Neither did the defendant file a motion in arrest of judgment, attacking the constitutionality of this statute. C.Cr.P. Art. 859(2). This constitutional attack is presented for the first time in the defendant's brief and (following a request by this Court) in an assignment of error recently filed with the district court. Since the defendant has not complied with the procedural method for reserving a constitutional attack upon this statute, insofar as the statute applies to this defendant, that issue is not properly before us for review.
With regard to an attack upon the facial constitutionality of the crime against nature statute, we note that the Louisiana Supreme Court has consistently held this statute to be constitutional. R.S. 14:89. State v. Lindsey, 310 So.2d 89 (La.1975); State v. McCoy, 337 So.2d 192 (La.1976); State v. Phillips, 365 So.2d 1304 (La.1979), cert. den. 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979), reh. den. 444 U.S. 890, 100 S.Ct. 196, 62 L.Ed.2d 127 (1979). For these reasons, this assignment lacks merit.

Assignment of Error No. 4
The defendant, by this assignment, contends that the trial judge erred in refusing to consider the defense of entrapment in this case. The defendant alleges that this error resulted from the trial judge's finding that an entrapment defense was not available to one who had denied the commission of the crime.
In discussing the defense of entrapment, the court in State v. Bernard, 441 So.2d 817, 820 (La.App. 3rd Cir.1983) writ den. 445 So.2d 439 (La.1984) stated:
Under the generally accepted view an entrapment is perpetrated when a law enforcement official or person acting in cooperation with such an official, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages, or otherwise induces another person to engage in conduct constituting such offense when he is not then otherwise disposed to do so. State v. Batiste, 363 So.2d 639 (La.1978). When entrapment is at issue, the focal point of the inquiry is on the predisposition of the defendant to commit the crime at issue as well as on the conduct of the police. State v. Batiste, supra. For entrapment to exist, a defendant must be induced in some way to engage in criminal conduct which he is not otherwise disposed to engage in; an entrapment defense will not lie if the officers or agents have merely furnished a defendant, who is predisposed to commit the crime, the opportunities to do so. State v. Moody, 393 So.2d 1212 (La.1981).
The Louisiana Supreme Court has found the defense of entrapment and a defense of non-commission of the crime to be compatible positions in certain instances. State v. Harrington, 332 So.2d 764 (La.1976). In Harrington, supra, at 767, a plurality of the Court stated:
There is no logical reason why the defendant should not be allowed to show that the entire plan involved in this case constituted a governmental attempt to entrap persons into committing the crime of bribery, even though she claims she did not bribe the officer, but that he took the money away from her when she refused to pay the bribe.
In this case the defendant unsuccessfully argued the defense of entrapment at the *721 hearing on the motion to quash the bill of information and the motion for a directed verdict.
Following the presentation of the state's case, the trial judge made an initial response to the defense of entrapment:
BY THE COURT:
But, Mr. Panzeca, every time the police officers do undercover vice, their intent is to snare their prey. All right? There's no question. They're not going out on the street with the intention of not arresting anybody. They're going out on the street with the intent to find offenders of the law if they are there. You can use semantics to use the word "entrap". But the legal definition of entrapmentthe legal definition that hopefully you're putting your hands on nowsays that it must be some type of enticement. You know, that they did it but the devil made them do it. All right? And at this point in timeI'm not saying what's going to come out laterbut at this point in time I have nothing tono testimony except a laymen's terms by the use of the word "entrap".... But I have not seen or heard any evidence that would lead me to perceive that the defendant was entrapped. It may be coming up, but I haven't heard anything as yet.... [Tr. 35-36]
* * * * * *
BY THE COURT:
I would even maybe tend to agree with you, Mr. Panzeca, if it were not the fact that we're fooling with an escort service. If someone had approached someone on the street, as they often do, and invite them up to their room for a drink, etc., etc., I could say yes that I would consider that an enticement of sorts. But she came to the room after receiving a call for what you claim to be a very legal business. And she went up to that room under the auspices of being a legal business person, at which time a crime occurred. Had Miss Picchini come off the street at the invitation or bequest of the officer, I'd say you're probably right that she was enticed. But she was sent out for business purposes.... [Tr. 39]
After the close of the case, the following colloquy took place:
BY THE COURT:
Let the record reflect that the state has presented its evidence and the defense has presented its evidence. And the rather curious defense of entrapment was made. Normally in an entrapment case, the defendant will take the stand and say they did it but they were enticed to do it. In this particular case, the defendant took the stand and denied that she did anything like that. So, therefore, she's denying her defense of entrapment.
BY MR. PANZECA:
Your honor, this is an attempt case. This is not
BY THE COURT:
That's correct. But she is denying that she ever attempted to do anything.
BY MR. PANZECA:
That's correct.
BY THE COURT:
And she said she kept her clothes on, she never accepted any money, that no money was ever given to her, that she never discussed any sex at all, that she was merely barred from the room. According to her testimony no crime was committed. And, therefore, I have to throw out any type of entrapment argument. I don't think it's present. [Tr 60]
* * * * * *
Our review of the record indicates a dual basis for the judge's rejection of the entrapment defense. That is, he first found that the evidence did not support a finding of entrapment, as there had been no enticement by the undercover police. This basis for rejecting the defense of entrapment is clearly supported by the record. The defendant's involvement with the escort service brought her to the hotel room of the undercover policemen. There she set the price for her services. After receiving $400 she proceeded to complete the agreement. Her actions towards this end were self-induced and the policeman's *722 actions merely furnished the opportunity, not the enticement, for the commission of the crime. The trial judge correctly concluded that the evidence did not support a finding of entrapment.[2]
Secondly, the trial judge rejected the entrapment defense because he erroneously assumed that such a defense was incompatible with the defendant's position that she had not attempted to commit the crime with which she was charged. This error was harmless, however, since the judge correctly concluded that the evidence presented at the trial did not support a finding that the defendant was entrapped.
For these reasons, assignment of error No. 4 lacks merit.

Assignment of Error No. 5
Defendant contends that her intent to commit the offense was not shown and therefore, the State failed to prove an essential element of the crime.
The offense of a crime against nature requires a general criminal intent. R.S. 14:89; 14:11. Such intent is present whenever there is specific intent and also when the circumstances indicate that the offender in the ordinary course of human experience must have adverted to the prescribed criminal consequences as reasonably certain to result from his (her) act. R.S. 14:10(2). Thus, in the case of a crime against nature, proof of the act which constitutes the crime is proof of the crime and the general criminal intent. State v. Frentz, 354 So.2d 1007 (La.1978).
In this case the fact that the defendant unrobed, knelt on the floor and attempted to place her mouth on Officer Meynard's penis was sufficient to constitute an attempted crime against nature and the general intent to commit the offense.
This assignment lacks merit.
Additionally, we have reviewed this record for errors patent upon its face and we find none. C.Cr.P. 920(2).
Finally, we have examined the record in order to determine whether there exist sufficient evidence to support the defendant's conviction. State v. Raymo, 419 So.2d 858 (La.1982). We find that viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of an attempted crime against nature. R.S. 14:89 and 14:27. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That is, the crime which the defendant is accused of attempting is defined as follows:
R.S. 14 Sec. 89. Crime against nature
A. Crime against nature is:
(1) The unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:42, 14:42.1 or 14:43. Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.
(2) The solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation.
* * * * * *
In this case the judge believed the facts as presented by the arresting officers. Officer Meynard testified that the defendant responded to a request he made with The Rising Sun Escort Service for an escort. She requested $60.00 for the escort service and $300 for herself. Defendant accepted $400 from the officer. The parties disrobed and the defendant attempted to commit an oral sex act.
This evidence is sufficient to support the defendant's conviction for an attempted crime against nature.
*723 For the reasons assigned the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] No objection has been presented to this Court that the issue of double jeopardy was not raised by a motion to quash filed with the trial judge. C.Cr.P. 535, subd. A(3). Since the language of Code of Criminal Procedure Article 594, to the effect that "[D]ouble jeopardy may be raised at any time ..." is ambiguous, we will consider the merits of defendant's assignment.
[2] The trial judge, in evaluating the credibility of the witnesses, chose to believe the policemen and not the defendant.