738 So.2d 640 (1999)
STATE of Louisiana
v.
Sterling E. WILLIAMS.
No. 98-KA-1146.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1999.
*643 Laurie A. White, Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Appellant, Sterling E. Williams.
John M. Crum, Jr., District Attorney, LaPlace, Louisiana, Attorneys for Appellee, State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
Defendant, Sterling Elias Williams, appeals from his conviction of two counts of oral sexual battery, a violation of La.R.S. 14:43.3 and one count of crime against nature, a violation of La.R.S. 14:89. Defendant also appeals his sentences of five years at hard labor for the crime against nature conviction and 15 years at hard labor for each of the two other convictions. We affirm in part and reverse in part.
Defendant was charged on July 16, 1997 with one count of aggravated crime against nature occurring on May 3, 1997, in violation of La.R.S. 14:89.1 and two counts of oral sexual battery occurring on May 3, 1997 and May 17, 1997, in violation of La.R.S. 14:43.3.
On October 14, 1997, at defendant's request, the trial judge allowed original defense counsel to withdraw and appointed substitute counsel. Shortly after, the Indigent Defender Board notified the court that defendant requested the withdrawal of newly appointed counsel and to defend himself. A hearing was held on October 22, 1997, afterwhich, the trial judge denied defendant's request. Nonetheless, the trial judge permitted defendant to subsequently file pro se motions to suppress statements, evidence and identification. The motions were denied on December 8, *644 1997, after finding no statements, evidence or identification to suppress. The trial judge further denied defense counsel's motion for a second preliminary examination. This court denied the writ application taken on that ruling.[1]
On the day of trial, February 10, 1998, the State amended Count 1 of the bill of information to reduce the aggravated crime against nature charge to crime against nature in violation of La.R.S. 14:89. The defendant was then arraigned on the amended charge and pled not guilty. That afternoon, a six-member jury was empaneled. Defendant was found guilty as charged on all three counts on February 12, 1998.
Defense counsel filed a motion for new trial on April 8, 1998. Defendant also filed a motion for new trial pro se on April 15, 1998. Both motions were denied by the trial judge. On August 19, 1998, the trial judge sentenced defendant to five years at hard labor on his conviction of crime against nature and to 15 years at hard labor on each of his convictions of oral sexual battery. The court ordered those sentences to be served consecutively.

FACTS
The alleged victim in this case is K.B., who was a 14-year-old juvenile at the time of the incidents described in the bill of information. Defendant married K.B.'s mother, Brenda Williams, in 1992 after they had lived together for two or three years.
At trial, Ms. Williams testified that K.B. was about seven years old when she and defendant started living together before they were married. According to Ms. Williams, defendant and K.B. appeared to have a good relationship up until May 17, 1997, the date that defendant was arrested.
In May 1997, Ms. Williams was employed as a nurse assistant at a health care facility in New Orleans. She ordinarily worked a daily shift from 11:00 p.m. to 7:00 a.m. the next morning. Defendant, who was unemployed, customarily drove her to work and then return to their home in LaPlace where he would stay with K.B. while Ms. Williams was working. When Ms. Williams got off of work, defendant would pick her up and drive her home.
Shortly after 7:00 a.m. on May 17, 1997, defendant picked Ms. Williams up from work as usual. Ms. Williams was scheduled to work a double shift that day and had to return to work at 3:00 p.m. that afternoon. On the way home, defendant told Ms. Williams that he wanted K.B. to wash the car. Ms. Williams responded that she saw no problem with that as long as defendant did not have to wake K.B. up to wash the car. When the two arrived home, Ms. Williams tended to her two-month-old grandson who was also living with her, and then went to sleep in her bedroom. At 1:30 p.m. that afternoon, Ms. Williams was awakened by her grandson crying. Concerned about being late for work, Ms. Williams woke up defendant, who was also asleep, and started getting herself ready to leave for work. Defendant came into the bedroom where Ms. Williams was taking care of her grandson, and he appeared upset about something. Ms. Williams asked defendant if he had awakened K.B. to wash the car, against her wishes. Defendant responded that he had awakened K.B. at 11:00 a.m. to wash the car, but K.B. had not done so. While arguing with defendant about the situation, Ms. Williams saw K.B. walk by, and she told him that he did not have to wash the car. K.B. told his mother not to worry about it and then went out the back door of the house. From the outside, K.B. raised one of the house's windows and called inside for Donald Burton, Ms. Williams' 40-year-old nephew who was also living there. Defendant went outside to find out what K.B. was saying, and Ms. Williams followed. She observed defendant standing by the car, engaged in a *645 heated argument with K.B. who was standing nearby. According to Ms. Williams' testimony, defendant cursed out K.B., and K.B. responded by cursing back at defendant and saying that he was going to telephone the police. K.B. then left and called the police. Later that day Ms. Williams accompanied K.B. to the sheriffs office where K.B. reported that defendant had sexually abused him.
Ms. Williams further testified that, since reporting these incidents, K.B. had become quite nervous and had expressed fear for what might happen to him should defendant be released from custody. She also confirmed that K.B. was undergoing counseling as a result of these incidents.
On cross examination, Ms. Williams testified that recently she had moved back to New Orleans and that K.B. was no longer in school because she had been asked to withdraw him from school. Ms. Williams stated that she was working with a social worker to get K.B. admitted to another school or training program. In addition, Ms. Williams testified that K.B. had been arrested on January 7, 1998, after shooting out the windows of a car. According to Ms. Williams, the person who owned the car refused to return CD's belonging to K.B. The CD's were in the car. Ms. Williams claimed that the owner of the car and two others assaulted K.B. and pulled his pants down. K.B. broke free, obtained a gun, and returned to shoot out the car windows and remove his CD's. Ms. Williams also claimed that she had spoken to defendant only once since his arrest on these charges. Finally, Ms. Williams testified that, although defendant frequently called her after dropping her off at work, she had no way of knowing his whereabouts once he left her at work.
K.B. testified next. He stated that he reported defendant to the police for sexual abuse after hearing the argument between defendant and his mother on May 17, 1997. K.B. testified that, on more than one occasion, defendant had tried to perform anal intercourse on him, and then forced him to perform oral sex on defendant. According to K.B., May 3, 1997 was the "last recent time" this had occurred. (R., p. 461, line 4). K.B. stated that, while Ms. Williams was asleep during the day of May 3, defendant asked K.B. if he would like to use defendant's car. K.B. told defendant that he would like to drive the car and then drove away in the company of an adult neighbor. After dropping the neighbor off, K.B. returned home with the car. Defendant met K.B. outside and said that he would have to give defendant sex in return for his allowing K.B. to use the car. K.B. testified that he protested, but that defendant claimed they had made a deal. K.B. said that he then told defendant that he would not have used the car had he known about such a deal. Later that night, after defendant returned home after driving Ms. Williams to work, defendant went to his room and then ordered K.B. to come into the bedroom. When K.B. entered the room, defendant told him to shut the door and remove his clothes. According to K.B., defendant applied some type of lubricant to himself and told K.B. to put the lubricant on his own "backside." (R., p. 461, line 32). Defendant then instructed K.B. to lie on his stomach, at which time, defendant got on top of K.B., placing his arm around K.B.'s neck. K.B. testified that defendant tried to perform anal intercourse on K.B., but the pain was so great that K.B. found the strength to push defendant off of him. K.B. further testified that defendant then ordered him to perform oral sex on defendant and that he complied. According to K.B., incidents of this type had occurred more than once. When asked why he acceded to defendant's demands, K.B. responded that defendant threatened physical harm to him, his mother, and his oldest brother.
On cross examination, K.B. provided details about the incident when he shot out the car window, and he stated that he was placed under house arrest following that incident. K.B. also described various disciplinary incidents he had gotten into at *646 school for fights, which he attributed to another student teasing him about his involvement in this case. Outside of the sexual abuse defendant is alleged to have committed, K.B. characterized defendant as a good stepfather.
Dr. Scott Benton, an expert in pediatrics with a special interest in child physical and sexual abuse, testified that he saw K.B. on June 26, 1997 for an evaluation of the alleged sexual abuse. He stated that there are three components of the evaluation: a detailed interview to obtain history, a complete physical examination, and laboratory analysis, as indicated. Based on the history he obtained from K.B., Dr. Benton estimated that sexual abuse of K.B. began in July 1991. Although he could not ascertain when the most recent abuse had occurred, he identified May 17, 1997 as the most "recent disclosure" by K.B. (R., pp. 475-476). Dr. Benton further testified that K.B.'s physical examination was normal and that the laboratory analyses performed revealed no problems. He noted that the child's AIDS testing was incomplete because the juvenile failed to appear for subsequent examination. Dr. Benton stated that he would not find it surprising for a male victim of sexual abuse to act out inappropriately if teased about that abuse or if held by others who were attempting to remove his pants.
Dr. Benton testified that the normal results obtained from K.B.'s physical examination are usual and neither corroborated nor invalidated the allegations of sexual abuse. Dr. Benton stated that, of the 800 children annually examined by his clinic on allegations of sexual abuse, approximately 20% have physical findings. Of that 20%, only half, or about 10% of the total, have physical findings that corroborate sexual abuse allegations. Thus, according to Dr. Benton, sexual abuse allegations cannot be verified solely on the basis of normal or abnormal physical findings in 90% of the cases. He stated several reasons for this. First, the perpetrator is usually well known to the child and physical force is not used on the victim. Second, because the perpetrator is usually known by the victim, disclosure of the abuse is frequently delayed and physical findings disappear. Third, in the case of male sexual abuse, the victim's mouth and anus are targets of the perpetrator. These areas of the body are lined with mucosal tissue, which heals quickly following injury.
Dr. Benton testified that he did not personally interview K.B. However, his records show that K.B. gave a clear and detailed history of sexual abuse by his stepfather. Following Dr. Benton's testimony, the state rested.
Defendant testified on his own behalf at trial. He denied ever sexually abusing K.B. and claimed that the juvenile's report to the police was totally false. According to defendant, K.B. alleged sexual abuse against him in retaliation for defendant's attempt to instill discipline and a work ethic in K.B. and in further retaliation for defendant's decision to evict family member Donald Burton from the residence in LaPlace. Defendant admitted that he had been a drug dealer and had several previous criminal convictions, but he stated that he had moved to LaPlace to change his life and his environment. When asked about the July 1991 starting date for the abuse estimated by Dr. Benton, defendant testified that he was in prison from January 7, 1990 until some time in 1992. His most recent imprisonment on a conviction lasted from September 1994 until around May 14, 1996. He claimed that he had communicated periodically with Ms. Williams while he was in custody on the current charges. Defendant denied ever giving or receiving sexual gratification from a male.
The defense then presented testimony from Trina Armstrong, Gene Fryoux, Grady Hall and Detria Horton. Trina Armstrong, defendant's cousin, testified that Ms. Williams asked her for a ride to deliver a money order to defendant while he was in custody at the St. John the Baptist jail on the current charges. She further testified that Ms. Williams asked to use *647 her name on the money order so nobody would know that Ms. Williams purchased the money order for defendant. Gene Fryoux, a private investigator, testified that he had made three-way telephone conversations connecting defendant, Ms. Williams and himself twice since defendant had been taken into custody on the present charges. Detria Horton testified that she started dating defendant in 1996 and continued that relationship through the time of defendant's arrest. According to Ms. Horton, defendant spent time with her sons, aged seven and nine years old, and no problems ever occurred.
Grady Hall, principal of Glade Elementary School in LaPlace, provided a history of K.B.'s disciplinary problems at that school. He testified that K.B. had an extensive history of suspensions for fighting, profanity and disrespect toward teachers and staff members. Mr. Hall stated that K.B. was first suspended on September 26, 1996 for fighting. Following three more suspensions, on January 28, 1997, K.B. was recommended for expulsion in accordance with state law. However, the child was placed back in school under a contract on February 17, 1997. A few weeks later, on March 5, 1997, K.B. was expelled from Glade Elementary for the remainder of the academic year after K.B. brought false charges against the assistant principal. K.B. started the 1997-98 academic year at Glade, but committed two more disciplinary infractions in the first semester. On December 8, 1997, K.B. was formally dropped from enrollment at Glade Elementary.
On appeal, defendant contends that:
1. There was insufficient evidence to support the verdict, thereby violating his right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Louisiana Constitution.
2. The trial judge improperly conferred with jurors outside the presence of defendant and his counsel in violation of La.C.Cr.P., art. 831, thereby denying him due process of law.
3. The trial court improperly admitted testimony of past criminal history and failed to grant a new trial in violation of La.C.Cr.P. Art. 770, thereby denying his right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Louisiana Constitution.
4. His right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2 and 16 of the Louisiana Constitution was violated, as follows:
a) Trial counsel failed to attack the sufficiency of the evidence.
b) Trial counsel failed to object to prejudicial remarks concerning prior criminal acts.
c) Trial counsel should have sought supervisory writs on the issue that a new attorney should have been appointed to represent the defendant.
d) Trial counsel failed to object to the sentence conferred on the appellant and failed to file a Motion to Reconsider Sentence on the basis that appellant's sentence was unconstitutionally excessive.
5. The trial judge erred by giving the jury an erroneous instruction regarding an essential element of the offense charged, in violation of La.C.C.P. arr. 802 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.
6. The trial judge improperly sentenced defendant, in violation of La. C.C.P. art. 883 and his Due Process Rights under the Fourteenth Amendment to the United States Constitution and Louisiana Article 1, Section 2 of the Louisiana State Constitution.
7. Defendant's sentence of twenty-five years without benefits is excessive in *648 violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I Section 20 of the Louisiana Constitution.
Defendant first asserts that there was insufficient evidence to support the verdict because (1) the state presented no physical evidence to show that K.B. was sexually abused, (2) K.B. made inconsistent statements about the date of the alleged offenses, and (3) no specific testimony established that K.B. was the victim of oral sexual battery on May 17, 1997.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La.1979), cert. denied, Abercrombie v. Louisiana, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). See also: State v. Mussall, 523 So.2d 1305 (La.1988). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. at 2789; State v. Abercrombie, 375 So.2d at 1177-1178. A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. It does not "serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial." State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1999 WL 21252.
The evidence, when circumstantial, must be sufficient that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. In a circumstantial evidence case, when the jury reasonably rejects the defendant's hypothesis of innocence presented in his own testimony, that hypothesis falls and the defendant is guilty, unless there is another hypothesis which raises a reasonable doubt. State v. Chester, 97-1001 (La.12/19/97), 707 So.2d 973. It is not, however, the appellate court's function to assess witness credibility or to reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443. The Court in Juluke stated:
In a case involving circumstantial evidence in which the jury has reasonably rejected the defense offered at trial, the reviewing court therefore "does not determine whether another possible hypothesis has been suggested by defendant which could explain the events in an exculpatory fashion.".... Instead, the reviewing court must "evaluate[] the evidence in the light most favorable to the prosecution and determine[] whether the alternative hypothesis is sufficiently reasonable that a rational juror could not `have found proof of guilt beyond a reasonable doubt.'".... (Citations omitted)
La.R.S. 14:89 A(1) defines crime against nature as:
The unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41 [rape], 14:42 [aggravated rape], 14:42.1 [forcible rape] or 14:43 [simple rape]. Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime. [Parentheticals added.]
Unnatural carnal copulation includes anal-genital intercourse, commonly known as sodomy. State v. Phillips, 365 So.2d 1304, 1307 (La.1978), cert. denied, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979). Penetration is an essential element of a *649 crime against nature committed by analgenital activity. Id.
Oral sexual battery is defined by La.R.S. 14:43.3 A(2) as follows:
A. Oral sexual battery is the intentional engaging in any of the following acts with another person, who is not the spouse of the offender, when the offender either compels the other person to submit by placing the person in fear of receiving bodily harm, or when the other person has not yet attained fifteen years of age and is at least three years younger than the offender:
. . . . . .
(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.
K.B. testified that on May 3, 1997, defendant inserted his penis into
his "backside." Because it was too painful for K.B., defendant withdrew. He then forced the child to perform oral sex. K.B. further testified that he complied out of fear for himself and his family. In addition, Dr. Brandon stated that K.B. provided a clear and detailed history of sexual abuse by defendant, starting in 1991 and culminating in May 1997.
Defendant cites State v. Owens, 606 So.2d 876, 879 (La.App. 2nd Cir.1992) arguing that we should reweigh and reassess the evidence here because credibility determinations are let to the trier of fact only when there are no internal inconsistencies and contradictions or countervailing incontrovertible physical evidence. Defendant argues that there is no physical evidence of abuse and the victim made inconsistent statements about the date of the alleged crimes.
First, the fact that there was no physical evidence does not constitute an irreconcilable conflict with any countervailing physical evidence. Dr. Benton explained the lack of physical evidence in this case and the jury found the testimony credible. We find no reason to reassess the doctor's credibility or reweigh that evidence.
Secondly, defendant alleges that K.B. made inconsistent statements at the preliminary examination and at trial which undermine the sufficiency of the evidence. Defendant contends that K.B.'s preliminary examination testimony conflicts with his trial testimony as to which night defendant allegedly attacked the juvenile. La. C.Cr.P. article 295 C authorizes use of the transcript of a witness's preliminary examination testimony to impeach or contradict the witness's trial testimony. However, the preliminary examination transcript was not used at the trial. Further, the trial transcript is devoid of any references to the preliminary examination and there are no other inconsistencies in the testimony. Thus, the trial record does not support this allegation.
Viewing the evidence in the light most favorable to the prosecution, we find that the State proved beyond a reasonable doubt the charges of oral sexual battery and crime against nature on May 3, 1997, Counts 1 and 2 of the bill of information.
Count 3 of the bill of information charges defendant with committing oral sexual battery of K.B. on or about May 17, 1997. However, the evidence presented at trial related solely to the allegations of the May 3, 1997 incident, which K.B. described as the "last recent time" that defendant had sexually abused him. (R., p. 461, line 4). Although K.B. testified that he performed oral sex on defendant more than one time, the child did not testify as to the details or date of any incident other than the one on May 3, 1997. Further, Dr. Benton characterized May 17, 1997 as the date of K.B.'s "most recent disclosure" of sexual abuse allegations against defendant. (R., pp. 475-476). As shown by the evidence presented at trial, it is clear that the inclusion of Count 3 was an error in the Bill of Information because May 17, 1997 was the date that the child reported the past incidents and was interviewed. Since *650 there was no evidence of oral sexual battery on or about May 17, 1997, we must reverse the conviction on Count 3.
In defendant's second assignment of error, he contends that he was denied due process of law when the trial court improperly conferred with jurors outside the presence of defendant and his counsel, a violation of La.C.Cr.P. art. 831.
The record shows that, shortly after retiring to deliberate, the jury sent the judge a note asking for the testimony of the victim. The judge reconvened the proceedings and, with defendant and both counsel present, advised them of the jury's question. Following discussion and agreement on the response to the question, the judge returned the jury to the courtroom where he instructed the jurors that they could not have a transcript of the victim's testimony, but rather, must rely on their memories of the testimony given at trial. The jury then returned to deliberations. The judge marked the jury's written question as Court No. 1. Within a matter of minutes, the following discourse occurred:
THE COURT:
We find that it is 12:03. The defendant is in open court with Mr. Muhammad. The State is represented by Ms. Graugnard. We have received another question from Mr. Duronslet who is the foreman of the jury. I'll mark it as Court Number 2.
"Was it stated how long ago the crime against nature started." That's No. 1. No. 2: "Did it begin in 1991 or was it just the three times?" That is the extent of the question to date.
I'll inform the jury that as the judge I cannot comment upon the evidence nor can I recapitulate it for them. They must rely upon their memories. Do you want me to add anything or subtract anything to that? Do you understand what they want?
MS. GRAUGNARD:
I understand what they want.
THE COURT:
All right.
MS. GRAUGNARD:
No objection, Your Honor.
MR. MUHAMMAD:
No objection, Your Honor.
THE COURT:
I'll just go tell them this time. I'll mark this question as Court Number Two.
(Judge exits courtroom.)
THE COURT:
The answer that I posed and then they submitted another question. They asked me, "What can we get?"
And I said, "Only physical evidence can be brought into the jury room." And at that point, they looked downcast, but that was the end of our discussion.
(R., pp. 561-562).
La.C.Cr.P. art. 831 A(4) and (5), provide in pertinent part that a defendant charged with a felony shall be present:
(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence; [and],
(5) In trials by jury, at all proceedings when the jury is present....
Defendant relies on State v. Wicken, 96-345 (La.App. 5th Cir. 10/1/96), 683 So.2d 805, 806 where this court held that the trial judge's ex parte conversation with a juror to determine the juror's ability to serve on the jury constituted reversible error. In Wicken, neither the defendant nor his attorney was present during the judge's conversation, which took place after jury selection but before opening statements. Defense counsel in Wicken had requested removal of the juror from the jury after overhearing the juror make a comment that there would not be a fair trial if the juror lost a day's pay because of the trial. The judge denied the request to remove the juror, stating that she had spoken to the juror in question following the comment and that she was satisfied *651 the juror was sufficiently calmed down to serve on the jury. On appeal, the defendant in Wicken claimed that he was denied a fair trial because of the trial judge's off the record conversation without counsel present. This court agreed, concluding that the language of Article 831 is mandatory and is subject only to exception when the defendant is voluntarily absent or when an emergency situation exists. Wicken, 96-345, 683 So.2d at 806. See also: La.C.Cr.P. art. 832. The defendant's conviction and sentence were vacated and the case was remanded for a new trial. Recently, when confronted with a similar situation involving a trial judge's ex parte conversation with a juror concerning the juror's ability to serve, this court relied on Wicken and again found reversible error. State v. Hampton, 98-105 (La.App. 5th Cir. 7/28/98), 716 So.2d 484.
This case is distinguishable from Wicken and Hampton. In those cases, the judge's ex parte communication occurred without the knowledge or approval of the defendant or defense counsel. Here, both were present when the judge proposed to go into the jury room and answer the jury's questions with the same response he had given to their first question, namely, that the jurors must rely on their memories of the testimony. The judge also offered defendant and his counsel an opportunity to provide input to that response. Defense counsel specifically stated that he had no objection to the judge's proposal, and the judge then entered the jury room. On returning to the courtroom, the judge reported that the jury, after hearing his response, asked what evidence was available to them and that he responded that only physical evidence could be brought into the deliberation room.[2] In effect, the judge's response to the jury merely restated the law on what evidence is available for jury review. La.C.Cr.P. art. 793. In addition, a review of the record in this case discloses no prejudice to defendant. The response to the jury request in this case would have been the same, even if that response had been given in open court with defendant and his counsel present, under the provisions of La.C.Cr.P. art. 793. In State v. Overton, 337 So.2d 1058 (La.1976), the supreme court, on rehearing, rejected a challenge similar to that made by this defendant, after finding no prejudice to the defendant in that case. Thus, we find no error in this regard.
In defendant's third assignment of error, he contends he was denied his right to due process of law when the trial court improperly admitted evidence of a past crime that was elicited during the testimony of defendant's wife. Defendant asserts that, during trial, the prosecutor elicited testimony from Ms. Williams about defendant's imprisonment from 1994 to 1996 on a drug charge. The trial transcript clearly shows, however, that defense counsel, and not the prosecutor, elicited the testimony forming the basis of this error assignment. The questioning and testimony about which defendant here complains occurred during defense counsel's cross-examination of Ms. Williams. Thus, the record itself discloses the absence of any factual basis for this error assignment.
The fourth assignment of error alleges ineffective assistance of counsel.
Ineffective assistance of counsel claims are most appropriately addressed on application for post conviction relief, rather than on direct appeal, so as to afford the parties adequate opportunity to make a record for review. State v. Truitt, 500 So.2d 355 (La.1987). However, when an ineffective assistance claim is properly raised by assignment of error on direct appeal and the appellate record contains sufficient evidence to evaluate the claim, the reviewing court may address the ineffective assistance claim in the interest of judicial economy. State v. Peart, 621 So.2d 780 (La.1993). In this case, the record lodged on appeal provides sufficient *652 evidence to address defendant's allegations.
The Sixth Amendment of the United States Constitution and Article I, Section 13 of the Louisiana Constitution safeguard a defendant's right to effective assistance of trial counsel. When a defendant raises a claim of ineffective assistance of counsel, that claim is evaluated under the two-prong test established by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must show (1) that defense counsel's performance was deficient, and (2) that the deficiency prejudiced the defendant. To show prejudice under this test, the defendant must demonstrate that the outcome of the trial would have been different, but for counsel's unprofessional conduct. Strickland, 466 U.S. at 687, 104 S.Ct at 2064. Effective assistance of counsel is not errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983). No precise definition of effective assistance of counsel exists, and an inquiry into counsel's effectiveness is factually specific for each case. State v. Peart, 621 So.2d at 788. A defendant's allegations of ineffectiveness must not only be established, but must also be coupled with a specific showing of prejudice to the defendant. State v. Morris, 98-236 (La.App. 5th Cir. 9/16/98), 719 So.2d 1076, 1081.
Defendant first suggests that his trial counsel was ineffective for failing to attack the sufficiency of the expert testimony and certain factual testimony presented at trial. Apparently referring to Dr. Benton's evaluation of the victim's sexual abuse allegations, defendant contends that "[t]he underlying scientific methodology was not scrutinized for its validity and reliability ..." Defendant further contends that trial counsel was deficient for not raising this issue either by pretrial motion or as part of the defense at trial. However, Dr. Benton's examination of the victim disclosed no physical findings of sexual abuse and the laboratory analyses ordered by Dr. Benton showed normal results for the victim. Both of these findings were favorable to the defense. Moreover, defense counsel fully cross-examined Dr. Benton about his clinical interview of the victim, which formed the basis for the doctor's opinion that the victim's sexual abuse allegations were valid. During that cross-examination, defense counsel brought to the jury's attention through the physician's own testimony that Dr. Benton did not interview defendant about the allegations made by the victim. Thus, the record does not support a claim that defense counsel was deficient in his handling of the "scientific methodology" used in this case or in cross-examining the state's expert witness.
Additionally, this court has held that, for purposes of an ineffective assistance of counsel claim, the filing of pretrial motions is squarely within the ambit of the attorney's trial strategy, and counsel is not required to engage in futility. State v. Pendelton, 96-367 (La.App. 5th Cir. 5/28/97), 696 So.2d 144, 156, writ denied, 97-1714 (La.12/19/97), 706 So.2d 450. Similarly, a defense attorney's examination of witnesses falls within the ambit of trial strategy for purposes of evaluating an ineffectiveness claim. State v. Soler, 93-1042 (La.App. 5th Cir. 4/26/94), 636 So.2d 1069, 1079, writs denied, 94-0475 (La. 4/4/94), 637 So.2d 450 and 94-1361 (La.11/4/94), 644 So.2d 1055.
Defendant also criticizes defense counsel's cross-examination of K.B., claiming that his attorney neither asked him about inconsistencies between K.B.'s testimony during the preliminary examination and at trial, nor asked him about the false charges K.B. made against a school official. The inconsistency alleged by defendant involves the May 3, 1997 incident.
At the preliminary examination on August 20, 1997, K.B. testified that the incident occurred on the night after the night that defendant had taken Ms. Williams to *653 work because defendant did not return home after taking Ms. Williams to work, which was May 4, 1997. At trial, K.B. testified that defendant did return home after driving Ms. Williams to work and that the incident occurred that same night, May 3, 1997. Even if defense counsel's performance is considered deficient for failing to call the jury's attention to this one-day inconsistency in K.B.'s recollection of the incident date, this deficiency does not reach the level of prejudice required to establish an ineffective assistance claim because defendant fails to demonstrate that, but for this deficient performance by his attorney, the outcome of the trial would have been different. In addition, defense counsel fully presented evidence to the jury about the false charges K.B. made against a school official through the testimony of defense witness Grady Hall, the school principal. Defense counsel's decision to elicit that testimony through Mr. Hall falls within the ambit of trial strategy.
Defendant next claims that his trial counsel was ineffective for failing to object to the prosecutor's questioning of Ms. Brenda Williams about defendant's incarceration on a previous drug charge. As noted in the discussion of the preceding assignment of error, however, the prosecutor did not conduct this questioning.
In his third claim of ineffective assistance, defendant argues that his attorney should have applied to this court for supervisory relief on the outcome of defense counsel's motion to withdraw and from the trial court's refusal to allow defendant to represent himself. The record shows that, at defendant's request, the trial court allowed defendant's original appointed counsel to withdraw because there was an erosion of the attorney-client relationship and that the judge appointed substitute counsel on October 14, 1997. On October 17, 1997, the Indigent Defendant Board filed a motion for a hearing to determine who was to represent defendant, as defendant indicated that he did not want the services of newly appointed counsel and now wished to represent himself. The trial judge conducted a hearing on October 22, 1997, after which he ruled that newly appointed counsel would represent defendant.[3] Although defendant now claims that there was an "incompatibility" between himself and his attorney, a review of the proceedings subsequent to the October 22, 1997 ruling discloses no disharmony between defendant and his trial counsel and defendant fails to demonstrate that the outcome of the case would have been different had the writ been applied for by counsel. Further, this was a pre-trial matter that falls within the ambit of trial strategy and defense counsel is not required to engage in futile actions. Given the doubtful prospect of this court exercising its discretionary supervision jurisdiction to set aside that ruling, we find no merit in this assertion.
Finally, defendant claims that he received ineffective assistance of counsel because his attorney neither objected to the sentence nor filed a motion to reconsider sentence under La.C.Cr.P. art. 881.1, thus precluding defendant from challenging his sentence as unconstitutionally excessive. The record shows that defense counsel failed to object to defendant's sentence when it was imposed and further failed to file a motion to reconsider that sentence. However, counsel's failure to do so cannot automatically be considered deficient performance. At the sentencing on August 19, 1998, the judge noted that the state had withdrawn a multiple offender bill that it had previously filed against defendant and then referred to an agreement between the parties relating to sentencing. The lack of an objection and *654 absence of a motion to reconsider sentence may stem from that agreement, which was not discussed on the record. Even if defense counsel's performance is considered deficient for those failures, defendant is not entitled to relief because he fails to demonstrate any prejudice. Furthermore, defendant specifically challenges his sentence as constitutionally excessive in Assignment of Error 7, and consistent with this court's prior decisions, that claim of constitutional excessiveness is fully considered in this appeal.
Considering the foregoing analysis, defendant has failed to establish that he received ineffective assistance from his trial counsel.
In defendant's fifth assignment of error, he contends that the trial court erred by giving the jury an erroneous instruction regarding an essential element of the offense charged. Defendant claims that the trial court improperly instructed the jury on the specific intent required to commit crime against nature and oral sexual battery, and that this error cannot be considered harmless because the state failed to prove defendant's specific intent beyond a reasonable doubt.
Defendant's argument is legally defective because crime against nature and oral sexual battery are offenses requiring proof of general intent, not specific intent as defendant claims. La.R.S. 14:11 governs the criminal intent required under the statutory definitions of crimes:
The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms "intent" and "intentional" have reference to "general criminal intent."
In State v. Picchini, 463 So.2d 714, 722 (La.App. 4th Cir.1985), writ denied, 468 So.2d 1202 (La.1985), the court held that the offense of crime against nature under La.R.S. 14:89 requires general criminal intent. In State in Interest of J.L., Jr., 592 So.2d 435, 438 (La.App. 5th Cir.1991), writ denied, 597 So.2d 1031 (La.1992), this court cited La.R.S. 14:11 as authority for its conclusion that sexual battery, as defined in La.R.S. 14:43.1, requires general criminal intent because the word "intentional" is included in the definition of that offense without a qualifying provision. The intent requirement found in the definition of oral sexual battery under La.R.S. 14:43.3 is identical to that contained in La.R.S. 14:43.1 for sexual battery. Oral sexual battery is the "intentional" engaging in certain specified acts with another person. The "intentional" in that definition lacks a qualifying provision. Thus, based on La.R.S. 14:11, general criminal intent is required to commit oral sexual battery. We find, therefore, that since specific intent is not an essential element of either crime for which defendant was convicted, the trial court was not required to instruct the jury on specific intent.
In his sixth and seventh assignments of error, defendant contends that the trial court improperly sentenced him in violation of La.Code Crim. Proc. art. 883 by ordering the sentences to be served consecutively and that his sentence is excessive.
Defendant contends that his sentences are constitutionally excessive because the trial court lacked justification for the maximum sentences it imposed on each of defendant's convictions. Although defendant failed to object to the sentences during the sentencing hearing or file a motion to reconsider sentence, we will review the sentence for constitutional excessiveness in accordance with prior jurisprudence in this Circuit. See: State v. McQuaig, 98-192 (La.App. 5th Cir. 7/28/98), 718 So.2d 535; State v. Jackson, 96-661 (La.App. 5th Cir. 4/9/97), 694 So.2d 440, 450, writ denied, 97-1050 (La.10/13/97), 703 So.2d 609, writ denied, 97-1255 (La.10/13/97), 703 So.2d 612.
*655 The United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. 8; La. Const. of 1974, Art. I, Sect. 20. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Daigle, 96-782 (La.App. 5th Cir. 1/28/97), 688 So.2d 158, 159. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. The sentence will not be set aside absent showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Daigle, 688 So.2d at 159
At the hearing on August 19, 1998, the trial judge sentenced defendant to the maximum prison term allowed by law on each of the convictions. Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged, and the worst type of offender. State v. Guzman, 95-444 (La. App. 5th Cir. 11/15/95), 665 So.2d 512, 516, writ denied, 95-2853 (La.2/28/96), 668 So.2d 366; State v. McCorkle, 97-966 (La. App. 5th Cir. 2/25/98), 708 So.2d 1212, 1218.
The trial judge made the following comments at the August 19, 1998 sentencing hearing:
May I see the record for a moment. Let the record reflect we're here for sentencing hearing. It was delayed, in part, because of the concerns of the State about the Multiple Bill, and today they have withdrawn that Multiple Bill. So, if there is no more impediment, we will have sentencing in this matter. Let the record reflect that Mr. Williams was in court in February, 1998 where he was found guilty by a jury of three courts. Considering the guidelines that's set forth in the Code of Criminal Procedure and the agreements by and between the parties, it is the sentence of this Court that on count one, Mr. Williams will be incarcerated for a term of five (5) years with the Department of Corrections. Count two, that he be incarcerated for a term of fifteen (15) years with the Department of Corrections. On count three, that he be incarcerated for a term of fifteen (15) years with the Department of Corrections. These terms will run consecutively and commence immediately with the defendant given credit for all time served.... This was made also with the advice of the presentence investigation performed both by the State of Louisiana, Department of Public Safety and Corrections at this Court's request after Mr. Williams was found guilty by a jury in February of 1998....[Emphasis added.]
(R., pp. 183-184).
In his sentencing comments, the trial judge referred to an agreement between the State and defendant. However, the details of that agreement and its impact on the sentencing are not disclosed in the record. Nor was the pre-sentence investigation referred to by the judge made part of the record lodged in this court. The record reflects, nevertheless, that defendant avoided enhanced sentencing by the State's withdrawing the habitual offender bill of information filed against defendant.
Courts have recognized the egregious nature of a violation involving betrayal of the paternal role, such as that involved in this case. See: State v. Guidrez, 98-377 (La.App. 5th Cir. 10/14/98), 721 So.2d 480, 489-490. Also, defendant's sentence for oral sexual battery is illegally lenient. Although the trial judge imposed the maximum prison term available for that conviction, he failed to impose the sentence without benefit of parole, probation or suspension of sentence, as specified by La.R.S. 14:43.3 C. However, absent a challenge by the state or defendant to the illegally lenient sentence, this court is without authority to correct the deficiency. State v. Fraser, 484 So.2d 122, 124 (La. *656 1986); State v. Bradford, 95-929 (La.App. 5th Cir. 6/25/96), 676 So.2d 1108, 1111.
We find that defendant's sentences are not constitutionally excessive. Defendant is the victim's stepfather. The offenses against the victim are egregious. Furthermore, defendant avoided enhanced sentencing in this case and received an illegally lenient sentence. Although the sentencing reasons provided by the judge were not given in great detail, a remand for more complete compliance with La. C.Cr.P. art. 894.1 is not necessary when the record otherwise clearly illumines the sentencing choice. State v. Martin, 400 So.2d 1063 (La.1981), on rehearing; State v. Guidroz, 721 So.2d at 489.
With regard to defendant's claim that the trial court improperly imposed consecutive sentences in this case, La. C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Recently referring to Article 883, the Louisiana Supreme Court stated that, "[a]lthough Louisiana law favors concurrent sentences for crimes committed as part of a single transaction, ... a trial judge retains discretion to impose consecutive penalties on the basis of other factors, including the offender's past criminality, violence in the charged crimes, or the risk he or she poses to the general safety of the community." State v. Thomas, 98-1144 (La.10/9/98), 719 So.2d 49, 1998 WL 713205 (citations omitted).
In this case, defendant's conviction of crime against nature under Count 1 of the bill of information and his conviction of oral sexual battery under Count 2 of the bill were part of the same transaction on May 3, 1997. Thus, there was a "presumption" of concurrent sentences under Article 883 for defendant's convictions on Counts 1 and 2. The trial judge, however, exercised the sentencing discretion afforded him by that article and imposed consecutive sentences on those two counts. From defendant's own trial testimony, the judge was aware of defendant's past criminality. Additionally, defendant's offenses were crimes of violence perpetrated against a juvenile who was defendant's stepson. Considering these factors, defendant is an unusual risk to public safety. See: State v. Jackson, 694 So.2d at 451. Consequently, we find that the trial judge did not abuse his discretion by imposing consecutive sentences in this case.

ERROR PATENT DISCUSSION
La.C.Cr.P. art. 920 provides: "the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Boudreaux, (La.App. 5th Cir.9/20/95); 662 So.2d 22, 28; State v. Gaines, 97-672 (La.App. 5th Cir.2/25/98), 707 So.2d 1354, 1359.
We note one patent error. Defendant was not advised properly of the *657 three-year time limit for filing an application for post conviction relief, as required by La.C.Cr.P. art. 930.8. This article dictates that, except under certain limited circumstances, a defendant must file his application for post-conviction relief within three years after his judgment of conviction and sentence has become final. Section C provides that the trial judge shall inform defendant of this prescriptive period at the time of sentencing. The trial judge here informed defendant that "he has (3) three years in which to file a petition for post-conviction relief." The trial judge neglected to inform defendant that the time limitation starts after the conviction becomes final. However, the failure to inform the defendant properly is not a ground for vacating the sentence. Rather, the remedy is to remand the case with an instruction to the trial judge to inform defendant of the provisions of Article 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice. State v. Gaines, 707 So.2d at 1359; State v. Crossley, 94-965 (La.App. 5th Cir.3/15/95), 653 So.2d 631, 636-637, writ denied, 95-0959 (La.9/15/95), 660 So.2d 459.
Accordingly, we hereby affirm defendant's conviction and his sentences for Count 1, crime against nature and Count 2, oral sexual battery, both occurring on May 3, 1997. We reverse the conviction on Count 3, oral sexual battery occurring on May 17, 1997. Further, we remand with an instruction to the trial judge to inform defendant of the correct provisions of La. C.Cr.P. art. 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
NOTES
[1] State v. Sterling Williams, Writ No. 97-K-1209 (La.App. 5th Cir. 12/5/97).
[2] No physical evidence was, of course, introduced at this trial.
[3] The record does not include a transcript of the October 22, 1997 hearing. However, the minute entry for that date indicates that the court considered defendant's request to represent himself and apparently concluded that defendant was not qualified to serve as his own counsel. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).