STATE OF LOUISIANA
v.
REBECCA ANNE GUIDROZ
2007 KA 1548.
Court of Appeal of Louisiana, First Circuit.
February 8, 2008.
Joseph L. Waitz, Jr., District Attorney, Ellen D. Doskey, Asst. District Attorney, Houma, LA., Attorneys for State-Appellee.
Bertha M. Hillman, Thibodaux, LA. Attorney for Defendant-Appellant, Rebecca A. Guidroz.
Before: CARTER, C.J., PETTIGREW and WELCH, JJ.
WELCH, J.
The defendant, Rebecca Anne Guidroz, was charged by bill of information with one count of hit-and-run driving resulting in death, a violation of La. R.S. 14:100 (count one), and one count of negligent homicide, a violation of La. R.S. 14:32 (count two). The defendant pled not guilty and, following a jury trial, she was found guilty as charged of both offenses. The defendant moved for a post verdict judgment of acquittal on both convictions. The trial court denied the motion as to the hit-and-run driving conviction, but granted it as to the negligent homicide conviction. The trial court ordered a verdict of "not guilty" entered on count two. The defendant subsequently was sentenced to imprisonment at hard labor for five years and a fine of $5,000.00 for the hit-and-run driving conviction. The trial court further ordered that the defendant serve an additional one-year imprisonment at hard labor if she defaults in payment of the fine and/or costs. The court denied the defendant's motion to reconsider the sentence. The defendant now appeals, challenging the sufficiency of the evidence to support the conviction and asserting that the sentence imposed is excessive. We affirm the conviction. We amend the sentence and affirm as amended.

FACTS
This criminal matter arose out of an accident that occurred at approximately 8:00 p.m. on July 26, 2005. The defendant was driving a vehicle down Main Street in Houma, Terrebonne Parish, Louisiana, when she accidentally struck and killed the victim, 42-year old Ronald Matthews, who had been riding a bicycle. The defendant's son, Brandon Pitre, was also in the vehicle. After striking the victim, the defendant did not stop to render aid or contact the police. Instead, the defendant continued driving. The defendant drove to her home and contacted Brandon's father, Roland Pitre. The defendant told Pitre that she had been in an accident. Approximately thirty to forty minutes later, Pitre arrived at the defendant's residence. Upon examining the damage to the defendant's vehicle, Pitre told the defendant that he believed that she had hit a person. The defendant dialed 911 and handed the telephone to Pitre to report the incident. The defendant claimed she was not aware that she had hit a person. She stated that both she and Brandon believed that she might have hit a mailbox. The defendant subsequently was arrested and charged with hit-and-run driving and negligent homicide.
At trial, Dr. Charles Ledoux, Terrebonne Parish Deputy Coroner, testified that the accident caused the victim to sustain blunt trauma, closed head injury, basal skull fracture, subdural and epidural hematomas, intracerebral bleeding, and liver laceration. All of these injuries, Dr. Ledoux opined, were consistent with being struck by a vehicle. Dr. Ledoux further explained that the fatal injury likely resulted from the victim's head either hitting the vehicle upon impact or hitting the concrete after being struck by and thrown from the vehicle. Toxicology tests revealed the presence of alcohol, metabolite of marijuana and cocaine in the victim's body.

SUFFICIENCY OF THE EVIDENCE
In her first assignment of error, the defendant contends the evidence presented at the trial in this case was insufficient to support the jury's verdict. Specifically, she contends the evidence failed to prove, beyond a reasonable doubt, that she knew or should have known that an accident resulting in a death or serious bodily injury to a person had occurred.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 requires that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. See State v. Wright, 98-0601, p. 2 (La. App. 1th Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157, XXXX-XXXX (La. 11/17/00), 773 So.2d 732. This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction; all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609, p. 12 (La. 10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La. 1984).
Louisiana Revised Statutes 14:100(A) defines hit-and-run driving as, "the intentional failure of the driver of a vehicle involved in or causing any accident, to stop such vehicle at the scene of the accident, to give his identity, and to render reasonable aid." Under language of this statute, the failure to stop to render aid must be an intentional act. In order to intentionally fail to stop, the driver must be aware that an accident has occurred. State in Interest of Korkosz, 393 So.2d 332, 333-34 (La. App. 1§ Cir. 1980).
In the instant case, it is undisputed that the defendant was driving the vehicle that struck and killed the victim. It is likewise uncontroverted that the defendant made no attempt to render any type of aid, medical or otherwise, at the scene of the accident. Thus, the only remaining issue is whether the defendant's failure to stop after the collision was intentional. To resolve this issue, we must determine whether the evidence established that the defendant was aware she struck someone.
At trial, the defendant's primary defense was that she did not know that her vehicle had hit a person. The defendant argued that at the time of the collision she actually and reasonably believed that she struck a mailbox and not a person. The State, on the other hand, argued that considering the significant damage to the defendant's vehicle, particularly the windshield, it is unreasonable to believe that the defendant was not aware that she had struck and injured the victim.
At trial, Houma City Police Department Lieutenant Craig LeBoeuf was accepted as an expert in accident reconstruction. Lieutenant LeBoeuf testified that the evidence collected at the scene of the accident indicated that the victim and the defendant were both traveling east on Main Street before the collision. Afterwards, the victim's bicycle was found approximately eight feet two inches off of the roadway. His body was discovered at rest along the curb. According to Lieutenant LeBoeuf, this evidence, coupled with the "yaw" tire marks[1] on the curb leading up to the sidewalk, indicated that the accident occurred on the side of the street near the curb. Lieutenant LeBoeuf opined that the vehicle in question left the main lane of travel, crossed over the fog line at the side of the street, and struck the victim who had been riding on the roadway near the curb. The victim was not riding in the lane of travel and the defendant did not drive onto the sidewalk. The vehicle made contact with the victim's bicycle at some point between the fog line and the curb.
Lieutenant LeBoeuf further testified that the damage to the defendant's vehicle and the victim's bicycle indicated that, upon impact, the victim was thrown off of the bicycle and onto the hood of the vehicle. Paint transfer from the victim's bicycle was found on the right bumper of the defendant's vehicle. Smear marks, which Lieutenant LeBoeuf believed were from the victim's clothing, were observed on the right side of the vehicle's hood. A large area of the right side of the vehicle's windshield was shattered. The smear marks on the hood and the condition of the windshield, according to Lieutenant LeBoeuf, indicated that after the collision, the victim's body slid upward on the hood and struck the windshield. Lieutenant LeBoeuf opined based on the nature and extent of the damages that after the victim's body made contact with the vehicle's hood, it "rode on the car for a short distance." Lieutenant LeBoeuf further noted that there was nothing present in the vehicle that would have obstructed the defendant's view.
Officer Douglas Levron of the Houma City Police Department spoke with the defendant in connection with his investigation of the accident. The defendant told Officer Levron that she was driving down the street when she hit a pothole causing her vehicle to veer to the right. She indicated that prior to veering off to the side of the road, she had observed an individual riding a bicycle on the roadside. After veering to the right, the defendant claimed she heard a "crash" or some kind of impact. According to Officer Levron, the defendant stated she also immediately noticed that her vehicle's windshield was damaged. The defendant told Officer Levron that she did not stop her vehicle to investigate because she was concerned about the well-being of her son in that neighborhood, which she claimed was a high-crime area. Officer Levron testified that the area where the accident occurred is, at best, a moderate crime area, "not high by any means."
The defendant testified on her own behalf. She denied ever seeing the victim riding a bicycle. She did not recall ever going off of the road. The defendant claimed she momentarily looked down towards her son's cellular telephone before feeling a "bump." She claimed that she was unsure what she hit but she did not believe it was a person. She stated she asked Brandon and he said that she may have hit a mailbox. The defendant testified that she would have stopped if she had realized that she had hit someone. The defendant further testified that she did not immediately realize that her vehicle's windshield was damaged. She explained that she was quite a distance away from the accident scene before she noticed the damage.
The defendant's son, Brandon, testified for the defense. He testified that he did not see the collision. He explained that he had been looking down towards his cellular telephone when the impact occurred. He claimed he did not know that the defendant had hit a person. He stated that he thought the defendant might have hit something "Mike a mailbox or something."
Based upon the aforementioned evidence and trial testimony, we find that the record in this case clearly demonstrates that the State carried its burden of proving beyond a reasonable doubt that the defendant was guilty of the offense of hit-and-run driving. We conclude, apparently as did *the jury, that the defendant knew or should have known that she struck the victim with her vehicle. The expert testimony regarding how the accident occurred and the damage to the defendant's vehicle indicate that the victim not only landed on the hood of the vehicle, but he remained there for a brief period. The evidence showed that the victim's body slid upward on the hood before crashing into the windshield and the top portion of the vehicle's frame. This evidence, coupled with the officer's testimony indicating that the defendant initially admitted to seeing someone riding a bicycle in the area shortly before the accident, provided a basis from which the jury could reasonably conclude the defendant was aware that she had struck the victim. The jury did not err in rejecting the defendant's claim of mistake of fact and concluding that the defendant intentionally fled the scene without stopping to offer assistance to the injured victim. The evidence amply supports this conclusion.
This assignment of error lacks merit.

DENIAL OF MOTION TO RECONSIDER SENTENCE
In her second assignment of error, the defendant contends the trial court erred in denying her motion to reconsider sentence. She asserts the trial court placed too much weight on the fact that she did not stop immediately after the accident and failed to consider several mitigating circumstances when imposing the sentence. Specifically, she alleges that the trial court failed to give adequate weight to the fact that: (1) she immediately drove home and called Mr. Pitre to investigate the possibility of an accident and she immediately called 911 once he indicated that he believed she hit a person; (2) she is the mother of two underage children; (3) she sought treatment from a grief counselor and her family doctor for emotional problems as a result of the accident; (4) she had no prior felony convictions; and (5) she was in a moderate crime area and was concerned about the safety of her child.
Louisiana Constitution Article I, Section 20 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. See State v. Sepulvado, 367 So.2d 762, 767 (La. 1979); see also State v. Lanieu, 98-1260, p. 12 (La. App. 1th Cir. 4/1/99), 734 So.2d 89, 97, writ denied, 99-1259 (La. 10/8/99), 750 So.2d 962. A sentence is constitutionally excessive if it is grossly disproportionate to the severity of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. See State v. Dorthey, 623 So.2d 1276, 1280 (La. 1993). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. See State v.. Hogan, 480 So.2d 288, 291 (La. 1985). A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. See State v. Lobato, 603 So.2d 739, 751 (La. 1992).
Louisiana Revised Statutes 14:100(C)(2), the applicable penalty provision, provides:
Whoever commits the crime of hit-and-run driving, when death or serious bodily injury is a direct result of the accident and when the driver knew or should have known that death or serious bodily injury had occurred, shall be fined not more than five thousand dollars or imprisoned with or without hard labor for not more than ten years, or both.
As previously noted, the defendant herein was sentenced to a mid-range sentence of five years imprisonment at hard labor with a $5,000.00 fine.
Prior to imposing sentence in this case, the trial court considered the facts and circumstances surrounding the offense. The court specifically noted that the defendant did, in fact, contact the police. The court explained that although the report of the incident was too late to be in compliance with the law on hit-and-run driving, it was to be considered as a mitigating factor in sentencing. The court also noted that the sentence to be imposed was not, in any way, punishment for the killing of the victim. Instead, the sentence was to punish the defendant's failure to stop and render aid to the injured victim. The court noted that, by neglecting her duty to stop, the defendant failed to give the victim "every opportunity to survive."
Considering the reasons stated by the trial court and based on the entire record before us, we find no abuse of discretion in sentencing the defendant to five years imprisonment at hard labor. Through her actions at the time of the offense, the defendant showed no regard for the life of the victim. Despite having had the victim's body land on the hood of her vehicle, travel upward and smash into the windshield before being thrown onto the pavement, as evinced by the damages to the vehicle, the defendant did not put forth any effort to assist the victim in any way. The defendant did not even attempt to call for assistance for the injured victim from either of the two cellular telephones she admitted were in the vehicle. We note, as did the trial court, although the defendant eventually contacted 911, whatever chances at survival the victim may have had following the collision had expired. Contrary to the defendant's assertions, we do not find the sentence to be grossly disproportionate to the severity of the offense, in light of the harm to the victim and his family, nor so disproportionate as to shock our sense of justice. Therefore, we conclude that the five-year sentence imposed in this case is not unconstitutionally excessive.
The defendant's contention that the trial court failed to give adequate weight to the mitigating circumstances also lacks merit. The record in this case clearly indicates that the trial court was aware of the relevant mitigating factors set forth by the defense in its brief before this court. As previously noted, the trial court specifically observed that the matter was an accident (unintentional) and that the defendant eventually contacted the police to make a report. From the defendant's testimony and defense counsel's argument at the sentencing hearing, the trial court was made aware of the fact that the defendant had underage children and she underwent grief counseling following the accident. On the other hand, the trial court also heard testimony from the victim's sister, Darlene McGuire, who felt that she "saw no remorse" from the defendant. In explaining the impact the incident had on her and her family, Ms. McGuire stated that she loved her brother and that the defendant had taken "something from [them] that cannot be replaced."
Considering the foregoing, it is clear that, although the trial court did not list every aggravating and mitigating factor, the trial court considered the relevant mitigating evidence. There is no requirement that any specific mitigating factors be given any particular weight by the sentencing court. See State v. Dunn, 30,767, p. 2 (La. App. 2nd Cir. 6/24/98), 715 So.2d 641, 643. The trial court did not en- in denying the defendant's motion to reconsider sentence as the record supports the sentence imposed.
Accordingly, this assignment of error lacks merit.

REVIEW FOR ERROR
The minutes and sentencing transcript in this case indicate that the defendant was sentenced to five years at hard labor, a fine of $5,000.00 plus court costs and, in default of payment, an additional one year imprisonment at hard labor. Imposition of a sentence of imprisonment at hard labor in default of payment of a fine or costs constitutes sentencing error. See La. C.Cr.P. art. 884. Accordingly, we amend the sentence to delete the phrase "at hard labor" from the one-year sentence. We remand the matter to the trial court with instructions to amend the sentencing minute entry and criminal commitment to reflect this disposition. We affirm the remainder of the sentence in all respects.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Lieutenant LeBoeuf explained that "yaw" marks are marks made from non-braking tires.